**Gerrard Eugene DIXON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–06–00351–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 29, 2007.

Discretionary Review Refused
March 19, 2008.

---

Vivian R. King, Houston, TX, for appellants.

Kevin Keating, Houston, TX, for appellees.

Panel consists of Justices ANDERSON, FOWLER, and FROST.

## MAJORITY OPINION

JOHN S. ANDERSON, Justice.

A jury found appellant guilty of aggravated assault and assessed punishment at thirty-eight years' confinement. In three issues, appellant contends (1) the evidence is factually insufficient to support the jury's verdict, (2) the trial court erred in admitting the expert testimony of a police officer, and (3) the trial court erred in admitting testimonial hearsay during the punishment phase of his trial. Finding no reversible error, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant and Priscilla Smith ("Complainant") became acquainted and started dating during 2003. After dating for approximately three months, they moved in together. On February 18, 2004, appellant accused the Complainant of trying to obtain another man's telephone number. When the Complainant denied appellant's accusation, appellant hit her repeatedly with his open hand, beat her with a tennis shoe, and struck her with a baseball bat. The next day, the Complainant received medical treatment and gave a statement to police.

Appellant was charged by indictment with aggravated assault. The indictment included two enhancement allegations, both of which were prior convictions for aggravated assault. Appellant pleaded "not guilty" to the charged offense, and "not true" to the enhancement allegations. The jury found appellant guilty of aggra-

vated assault. At the conclusion of the punishment phase of appellant's trial, the jury found that both enhancement allegations were true, and assessed punishment at thirty-eight years' confinement.

## DISCUSSION

### I. Is the Evidence Factually Sufficient?

■ In his third issue, appellant argues the evidence is factually insufficient to support the jury's finding that appellant intentionally caused bodily injury to the Complainant using a baseball bat.

### A. Standard of Review

■ In a factual sufficiency review, we consider all the evidence in a neutral light. *Prible v. State*, 175 S.W.3d 724, 730–31 (Tex.Crim.App.2005). The evidence may be factually insufficient in two ways. *Id.* at 731. First, when considered by itself, evidence supporting the verdict may be so weak the verdict is clearly wrong and manifestly unjust. *Id.* Second, where the evidence both supports and contradicts the verdict, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met. *Id.* In conducting a factual sufficiency review, we must employ appropriate deference so that we do not substitute our judgment for that of the fact finder. *Jones v. State*, 944 S.W.2d 642, 648 (Tex.Crim.App.1996). Our analysis must consider the evidence appellant claims is most important in allegedly undermining the jury's verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

### B. Analysis

The Complainant testified she met appellant during the course of her employment at a Kroger grocery store. Appellant was a customer in the store and he asked the Complainant for her telephone number. The Complainant testified she and appellant started dating during mid–2003 and moved into an apartment together approximately three months later. On February 18, 2004, appellant called the Complainant at her place of work and told her that he wanted to speak with her about something when she got home. That evening, when she arrived home, appellant accused the Complainant of trying to obtain another man's telephone number. The Complainant testified that when she denied appellant's accusation, appellant slapped her and accused her of lying. The Complainant testified she knew appellant was going to hit her again, so she sat down on the couch and curled up to defend herself. The Complainant testified appellant hit her on her head and face five or six times with his open hand. The Complainant used her arms to cover her face. Appellant took off one of the Complainant's tennis shoes and repeatedly struck the Complainant's arms with the shoe. Next, appellant retrieved a baseball bat from a closet and approached the Complainant with the bat "already swung back." The Complainant testified appellant swung the bat in the direction of her head and, when she raised her arm and leg to protect her head, appellant struck the Complainant's right leg with the bat. The Complainant testified appellant apologized to her and begged her not to call the police.

The Complainant testified she went to work the next day, but it was difficult for her to walk or perform her job duties. One of the Complainant's coworkers took her to Northwest Medical Center where she received medical treatment and gave a statement to police. State's Exhibits two through fifteen consist of photographs of the Complainant taken on February 19, 2004. State's Exhibits two through eight depict bruising on both of the complainant's arms which, the Complainant testi-

fied, was caused by appellant striking her with a shoe. State's Exhibits nine through fifteen depict a large bruise on the Complainant's right thigh which, the Complainant testified, was caused by appellant striking her with a baseball bat.

Appellant claims the jury's verdict is undermined by the Complainant's testimony that after appellant assaulted her, the Complainant and appellant began dating again and lived together in a hotel room from approximately June to December of 2004, even though the Complainant knew appellant was seeing other women. Appellant further contends the jury's verdict is undermined by the Complainant's testimony that she knew a warrant had been issued for appellant's arrest but did not report his whereabouts to the police until December of 2004.

Viewing all the evidence in a neutral light, we hold the evidence supporting the verdict is not so weak that the verdict is clearly wrong and manifestly unjust, nor is the contrary evidence so strong that the beyond-a-reasonable-doubt standard could not have been met. *See Prible,* 175 S.W.3d at 730–31. Accordingly, the evidence is factually sufficient to prove appellant intentionally caused injury to the Complainant by using a baseball bat. *See id.* Appellant's third issue is overruled.

## II. Did the Trial Court Abuse its Discretion by Admitting the Expert Testimony of Officer Kerry Bray?

In his second issue, appellant argues the trial court abused its discretion by admitting the expert testimony of Officer Kerry Bray regarding the dynamics of family violence. Appellant contends Officer Bray was not qualified to give expert testimony pertaining to family violence, and further argues that Bray's "testimony on family abuse dynamics just serves to bolster the complainant's testimony."

### A. Standard of Review

We review a trial court's decision to admit or exclude expert testimony for an abuse of discretion. *Ellison v. State,* 201 S.W.3d 714, 723 (Tex.Crim.App.2006). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Casey v. State,* 215 S.W.3d 870, 879 (Tex.Crim.App.2007).

### B. Applicable Law

Rule 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Tex.R. Evid. 702. Pursuant to Rule 702, the trial court, before admitting expert testimony, must be satisfied that three conditions are met: (1) that the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) that the subject matter of the testimony is appropriate for expert testimony; and (3) that admitting the expert testimony will actually assist the fact finder in deciding the case. *Alvarado v. State,* 912 S.W.2d 199, 215–16 (Tex.Crim.App.1995). The proponent of the expert testimony bears the burden of proving the expert's qualifications. *Perez v. State,* 113 S.W.3d 819, 832 (Tex.App.-Austin 2003, pet. ref'd).

### C. Analysis

During the guilt/innocence phase of appellant's trial, the State elicited testimony from Officer Bray regarding the propensity of family violence victims to return to the family members who abuse them. Appellant objected and conducted a voir dire examination of Officer Bray regarding his qualifications. The trial court overruled

appellant's objection and Officer Bray gave the following testimony:

> The common thing is that a lot of the abusers or the people that are being abused gets [sic] themselves into a position where they feel like they have no other recourse but to stay with the person they're with, whether it's money matters, whether it's the children, or if it's all threats. They will leave for a short term, then they start getting the threats to them from the abuser saying if you don't come back to me, then I'm going to do such and such. And it usually has something to do with harm; whether it's going to be to them or whether it's going to be to children or a related threat, I'm going to get you if I see you on the street, things like that. So, they feel that it's safer to go back to the abuser and live with them and keep them happy than it is to try and live on their own and look over their shoulder over and over and over again.

■■■■■ Appellant contends Officer Bray was not qualified to testify about the behavior of victims of family violence because Bray has no formal college education. Contrary to appellant's claim, the specialized knowledge which qualifies a witness to give an expert opinion may be derived from specialized education, practical experience, a study of technical works, or a varying combination of these things. *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex.Crim.App.2000). Officer Bray testified he has been a Houston Police Officer for twenty-three years and has been an investigator since 1989. Bray testified he received training from the Houston Police Department pertaining to family violence. Bray testified that as a patrol officer he visited scenes where family violence had occurred and worked with victims of domestic abuse. Bray testified he joined the HPD Family Violence Unit in 1999 and,

since that time, has been involved in more than 300 cases involving domestic violence. Bray further testified he has observed a common trend among victims of family violence. Based on Officer Bray's knowledge, training, and experience, we conclude Bray was qualified to give expert testimony regarding the behavior of victims of family violence. Tex.R. Evid. 702.

The concurring opinion argues the record contains no evidence to show Officer Bray had the qualifications to testify on the subject matter of the behavioral propensity of victims who return to abusers post-attack; therefore, the trial court abused its discretion. However, we believe the testimony by Officer Bray regarding his specific training in family violence and extensive experience with victims of domestic abuse provides ample evidence for the trial judge to determine Officer Bray was qualified as an expert in this field. Therefore, we cannot agree with the concurrence that the trial judge abused its discretion.

In support of our position that Officer Bray was qualified as an expert regarding the behavior of victims of family violence, we look to several courts of appeals cases where an officer was qualified as an expert on subjects outside general law enforcement duties. In *Perryman v. State*, the appellant was convicted of aggravated sexual assault. *Perryman v. State*, 798 S.W.2d 326, 328 (Tex.App.-Dallas 1990, no pet.). During trial, the court allowed an officer to testify regarding the psychological profile of the victim's assailant. *Id.* The officer testified the victim's assailant was an experienced offender who he categorized as a "power reassurance rapist." *Id.* at 329. On appeal, appellant argued the trial court erred in allowing his testimony. *Id.* at 328. The Dallas court concluded because of the officer's practical experience in dealing with sexual assaults,

specific training in psychological profiling, and previous experience, the officer qualified as an expert. *Id.* at 329.

In *Thomas v. State,* the appellant was convicted of theft and on appeal complained about the admission of an officer's expert testimony. *Thomas v. State,* 915 S.W.2d 597, 599–600 (Tex.App.-Houston [14th Dist.] 1996, pet. ref'd). During trial, a police officer testified as an expert regarding the procedures of a con game referred to as a "pigeon drop" scheme. *Id.* at 600. This court determined because the officer had training in the area of financial swindles, was certified to teach other officers in this area, and had interviewed con artists who participated in pigeon drop schemes, he was qualified as an expert. *Id.* at 600–01.

In *Sabedra v. State,* the appellant was convicted of aggravated assault. *Sabedra v. State,* 838 S.W.2d 761, 762 (Tex.App.-Corpus Christi 1992, pet. ref'd). During trial, the court allowed an officer to testify as an expert regarding his knowledge on stab wounds and his opinion on whether the victim's wounds were serious and permanent. *Id.* at 763. The defendant objected at trial claiming the police officer was testifying as a medical expert, which he was not qualified to do, but the trial court allowed the testimony. *Id.* On appeal, the Corpus Christi court concluded because the officer had experience in viewing and investigating slash wounds, he possessed special knowledge and was therefore qualified as an expert regarding the seriousness and permanence of the wounds. *Id.*

█ Appellant next argues that the subject matter of Officer Bray's testimony was not appropriate for expert testimony. However, Texas courts have recognized testimony pertaining to the behavior of abuse victims as an appropriate subject for expert testimony. *See Fielder v. State,*

756 S.W.2d 309, 320 (Tex.Crim.App.1988) (finding expert testimony was relevant and helpful because it assisted lay persons in understanding "the conduct of a woman who endures an abusive relationship"); *Harris v. State,* 133 S.W.3d 760, 775 (Tex. App.-Texarkana 2004, pet. ref'd) (holding trial court's noncompliance with Rule 705(b) was harmless where expert testified regarding behavior patterns of abuse victims). Officer Bray's field of expertise is legitimate. Bray's testimony was within the scope of his expertise and properly relied on observations made during his experience with victims of family violence.

█ Finally, appellant contends Officer Bray's testimony was not helpful to the jury. Appellant cross-examined the Complainant extensively regarding her contact with appellant after the assault. Appellant argued at trial and continues to argue on appeal that the Complainant's testimony that she lived with appellant after February 18, 2004 undermines her testimony that she was assaulted by appellant with a baseball bat. Appellant's arguments in this case have placed the Complainant's post-assault behavior at issue. Therefore, Officer Bray's testimony assisted the trier of fact by helping the jury to understand the evidence regarding the Complainant's post-assault behavior.

We conclude the trial court did not abuse its discretion by admitting the expert testimony of Officer Kerry Bray regarding the dynamics of family violence. Appellant's second issue is overruled.

## OIII. Did the Trial Court Improperly Admit Testimonial Hearsay During the Punishment Phase of Appellant's Trial?

In his first issue, appellant contends the trial court erred in admitting the alleged testimonial hearsay statements of Carrie

Brownfield. Brownfield did not testify at appellant's trial. Evidence of statements made by Brownfield was admitted during the punishment phase of appellant's trial, and came from two sources: (1) an audio-tape of a 9–1–1 call made by Brownfield on September 20, 2004, and (2) the testimony of Deputy Benwood Russell, the police officer who responded to the 9–1–1 call. Appellant objected to evidence of Brownfield's statements on the grounds that it was hearsay and violated his rights under the Confrontation Clause. The trial court overruled appellant's objections. The 9–1–1 tape, described below, was published to the jury. Deputy Russell testified, *inter alia*, that Brownfield told him she was assaulted by appellant on September 20, 2004. Citing *Crawford v. Washington*,[1] appellant contends the admission of Brownfield's statements violated his right to be confronted with the witnesses against him, as guaranteed by the Sixth Amendment to the United States Constitution.[2]

### A. Standard of Review

■■■ The proper standard of review on the issue before us is a hybrid one: both deferential and *de novo*. "Although we defer to a trial court's determination of historical facts and credibility, we review a constitutional legal ruling, *i.e.* whether a statement is testimonial or non-testimonial, *de novo*." *Wall v. State*, 184 S.W.3d 730, 742 (Tex.Crim.App.2006); *see also Lilly v. Virginia*, 527 U.S. 116, 136, 119 S.Ct. 1887, 1900, 144 L.Ed.2d 117 (1999) (stating courts should independently review whether out-of-court statements violate the Confrontation Clause). *De novo* review is appropriate because the legal ruling of whether a statement is testimoni-

al under *Crawford* is determined by the standard of an objectively reasonable declarant standing in the shoes of the actual declarant. *Wall*, 184 S.W.3d at 742–43. "On that question, trial judges are no better equipped than are appellate judges, and the ruling itself does not depend upon demeanor, credibility, or other criteria peculiar to personal observation." *Id.* at 743.

### B. Applicable Law

■■■ The Confrontation Clause of the Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, the Supreme Court held that it was a violation of the Sixth Amendment to admit testimonial statements of a witness who did not appear at trial unless that witness was unavailable to testify and the defendant had a prior opportunity for cross-examination. *Crawford*, 541 U.S. at 68, 124 S.Ct. at 1374. Generally speaking, a statement is "testimonial" if it is a solemn declaration made for the purpose of establishing some fact. *Id.*, 541 U.S. at 51, 124 S.Ct. at 1364. The *Crawford* Court chose to "leave for another day any effort to spell out a comprehensive definition of 'testimonial.' " *Id.* However, the Court identified certain classes of "core" statements which could be regarded as testimonial, including: (1) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," and (2) statements taken by police officers "in the course of interrogations." *Id.* at

---

1. *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

2. Appellant does not argue on appeal that the admission of Brownfield's statements violated his confrontation rights under the Texas Constitution.

51–52, 124 S.Ct. at 1364. The Court noted that its use of the term "interrogation" in this context was "in its colloquial, rather than any technical legal sense." *Id.* at 53, 124 S.Ct. at 1365 n. 4.

We have identified the following principles as guidance in determining whether statements are testimonial in nature: (1) testimonial statements are official and formal in nature, (2) interaction with the police initiated by a witness or the victim is less likely to result in testimonial statements than if initiated by the police, (3) spontaneous statements to the police are not testimonial, and (4) responses to preliminary questions by police at the scene of the crime while police are assessing and securing the scene are not testimonial. *Ruth v. State*, 167 S.W.3d 560, 568–69 (Tex.App.-Houston [14th Dist.] 2005 pet. ref'd).

The Supreme Court recently provided additional guidance for determining whether an out of court statement contains testimonial hearsay. *See Davis v. Washington*, 547 U.S. 813, 821–29, 126 S.Ct. 2266, 2273–78, 165 L.Ed.2d 224 (2006). The Court explained:

> Statements are non-testimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.* at 2273–74. In *Davis*, the Court held that statements made by a victim of domestic violence during a 9–1–1 call were not testimonial. *Id.* at 2277. In its analysis, the Court considered the following characteristics of the exchange: (1) the caller was describing events as they were actually happening, rather then past events, (2) any reasonable listener would recognize that the caller was facing an ongoing emergency, (3) the nature of the questions and answers, viewed objectively, was such that the elicited statements were necessary to be able to resolve the present emergency, rather than simply to learn what had happened in the past, and (4) the caller was frantically answering the 9–1–1 operator's questions over the telephone, in an environment that was not tranquil or safe. *Id.* at 2276–77. The Court noted that the initial interrogation conducted during a 9–1–1 call is ordinarily not designed primarily to establish or prove some past fact, but to describe current circumstances requiring police assistance. *Id.* at 2276.

### C. Analysis

#### 1. Confrontation Rights During the Punishment Phase

Initially, the State argues that the Confrontation Clause does not apply during the punishment phase of a criminal trial in a Texas court. However, the Court of Criminal Appeals and this court have found Confrontation Clause violations during the punishment phase of criminal trials, thereby implicitly finding that the Confrontation Clause does apply during the punishment phase. *See Russeau v. State*, 171 S.W.3d 871, 880–81 (Tex.Crim. App.2005) (holding trial court erroneously admitted testimonial hearsay during punishment phase in violation of Confrontation Clause); *Grant v. State*, 218 S.W.3d 225, 232 (Tex.App.-Houston [14th Dist.] 2007, pet. ref'd) (finding trial court erred in admitting testimonial statements in violation of *Crawford* during punishment phase). We reject the State's argument that the Confrontation Clause does not apply dur-

ing the punishment phase of a criminal trial.

## 2. The 9–1–1 Audiotape—A Cry For Help

 State's Exhibit 36, an audiotape of a 9–1–1 call initiated by Brownfield, was admitted into evidence and published to the jury during the punishment phase of appellant's trial. Following is a transcript of the 9–1–1 call made by Brownfield. We preface this transcript by noting that Brownfield was highly distraught and cried continuously throughout the 9–1–1 call, at times becoming hysterical.

[Operator # 1]: Harris County Sheriffs' Department. Do you need police, fire, or ambulance?

[Brownfield]: I need a police officer please.

[Operator # 1]: Okay. Are you hurt in any way, ma'am?

[Brownfield]: I don't need an ambulance or anything.

[Operator # 1]: Okay. Calm down and let me transfer you to the Sheriffs' Department.

[Brownfield]: Thank you.

[Operator # 1]: Try and calm down please.

[Brownfield]: I'm trying.

[Operator # 2]: Harris County 911 do you need police?

[Brownfield]: I need a police officer to my residence please.

[Operator # 2]: Okay. What's going on, ma'am?

[Brownfield]: My boyfriend just beat me up.

[Operator # 2]: Do you need an ambulance?

[Brownfield]: No, I'm okay.

[Operator # 2]: Okay. Thank you.

[Brownfield]: I mean, I don't know if I need a cop to come out here. I don't know what to do. I've never had this happen before. I want to file charges.

[Operator # 2]: Is he still on the premises?

[Brownfield]: No. We were in my car.

[Operator # 2]: Are you at home now?

[Carrie]: I came home.

[Operator # 2]: What's the apartment number?

[Brownfield]: It's Unit D, it's the third trailer on the left.

[Operator # 2]: What's your name?

[Brownfield]: Carrie.

[Operator # 2]: Carrie, what—

[Brownfield]: I don't know if a police officer has to come out here. I mean, I don't need an ambulance or anything, and he is gone. But I want to file charges, so I don't know if I should just go down to the station tomorrow—

[Operator # 2]: No, no, no, no. We'll send you an officer.

[Brownfield]: Okay.

[Operator # 2]: Okay. He's never done this before?

[Brownfield]: Yeah.

[Operator # 2]: Okay, and he's not there?

[Brownfield]: No. He's not here, but my door doesn't lock very good. I don't think he'll come over here. I'm sorry.

[Operator # 2]: It's okay. I can understand.

[Brownfield]: I didn't want to call the police on him.

[Operator # 2]: You don't?

[Brownfield]: I mean, I do, but I feel bad.

[Operator # 2]: Why? You didn't do anything.

[Brownfield]: He said he's going to kill me if I call the police. He told me he'd kill my whole family.

[Operator # 2]: It's okay Carrie. Calm down. Carrie, calm down.

[Brownfield]: Okay. Yes ma'am.

[Operator # 2]: Do you think he's going to come back?

[Brownfield]: No. I don't think he'll come back tonight. The police are already looking for him.

[Operator # 2]: They are? For what, ma'am?

[Brownfield]: Aggravated assault.

[Operator # 2]: Okay.

[Brownfield]: I think I broke my finger.

[Operator # 2]: Do you want to see an ambulance?

[Brownfield]: No.

[Operator # 2]: Okay, Carrie. What's the name of your trailer park?

[Brownfield]: It's not a name.

[Operator # 2]: There's no name?

[Brownfield]: No, ma'am.

[Operator # 2]: Is there a gate?

[Brownfield]: No ma'am.

[Operator # 2]: What I'm going to do is I'm going to go ahead and enter this call for you. But I need—If he comes back I need you to call back through 9–1–1. Okay?

[Brownfield]: He won't. We weren't even here. We were in my car.

[Operator # 2]: Okay. But if he comes to your house, go ahead and call us back. Okay?

[Brownfield]: Yes, ma'am. How long do you think it will be?

[Operator # 2]: I'm not sure, but I'm putting the call in now. Okay?

[Brownfield]: Yes, ma'am.

[Operator # 2]: Take a deep breath. Okay?

[Brownfield]: Yes ma'am.

[Operator # 2]: It's okay. We'll get you some help, okay?

[Brownfield]: I don't like calling the police on people but—

[Operator # 2]: Yeah, but he doesn't have the right to do this to you. Take a deep breath okay? You're gathering yourself okay now?

[Brownfield]: Yeah, I'm okay.

[Operator # 2]: I've got the call in for you, okay. I just need you to stay there and make sure you don't open the door. Make sure that when we really knock on the door, they'll let you know who it is.

[Brownfield]: Okay.

[Operator # 2]: Okay. Now if he comes back, you call us through 9–1–1. Okay?

[Brownfield]: Okay. Thank you.

[Operator # 2]: All right, Carrie.

[Brownfield]: Bye.

[Operator # 2]: Bye-bye.

Citing *Davis,* appellant argues that Brownfield's statements to the 9–1–1 operator were testimonial because Brownfield was not presently being assaulted, was reporting a crime that occurred at a different location, and was willing to wait until the next day to file a police report. However, we find the following facts compelling: Brownfield was highly distressed and stated that her "boyfriend just beat [her] up." *See Davis,* 126 S.Ct. at 2277 (finding 9–1–1 caller's "frantic answers" indicative of non-testimonial statements). Brownfield told the 9–1–1 operator that the assault occurred in her car, and she did not know what to do. Brownfield stated she did not *think* the assailant would come to her home; however, the assailant was currently wanted by the police for aggravated assault, the assailant threatened to kill Brownfield and her entire family; and the

door to her trailer "doesn't lock very good." Although Brownfield stated she did not need an ambulance, Brownfield told the 9–1–1 operator that she believed her finger was broken, and inquired about how long it would take the police to arrive. Brownfield's statements were made in the course of a conversation initiated by the victim of a crime, and were neither "official and formal in nature" nor "solemn declaration[s] made for the purpose of establishing some fact." *Crawford,* 541 U.S. at 51, 124 S.Ct. at 1364; *Ruth* 167 S.W.3d at 569. Viewed objectively, the primary purpose of Brownfield's 9–1–1 call and her statements to the operator was to "cry for help." *Davis,* 126 S.Ct. at 2279.

Similarly, the primary purpose of the 9–1–1 operator's questions and Brownfield's responses to those questions was to determine if Brownfield was physically injured and in need of medical assistance, and to assess the potential for a continuing threat to Brownfield's safety or the safety of the responding officer. *See id.* at 2273–74 (noting that officers called to investigate need to assess the situation to determine potential threats to their own safety and the safety of the victim). The operator asked Brownfield if she was injured and inquired about whether the assailant was present, and whether Brownfield thought the assailant would return. The operator instructed Brownfield to stay inside of her home and "make sure you don't open the door." Importantly, the operator did not inquire about the assailant's name and address, or other information which could potentially be relevant to a later criminal prosecution. *See id.* Accordingly, we conclude the statements in the 9–1–1 call initiated by Brownfield, when viewed objectively, were made under circumstances

indicating that the primary purpose of the interrogation was to enable the police to meet an ongoing emergency, rather than simply to learn what had happened in the past. *See id.* Therefore, Brownfield's statements on the 9–1–1 audiotape are not testimonial.

■■■ Appellant next argues the trial court erred in admitting the 9–1–1 tape because Brownfield's statements do not fall within the excited utterance exception to the hearsay rule.[3] Appellant objected to State's Exhibit 36 as hearsay, and the trial court overruled appellant's objection. We review the trial court's evidentiary ruling on this sub-issue for an abuse of discretion. *See Zuliani v. State,* 97 S.W.3d 589, 595 (Tex.Crim.App.2003) ("The admissibility of an out-of-court statement under the exceptions to the general hearsay rule is within the trial court's discretion.") An excited utterance is a "statement relating to startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Tex.R. Evid. 803(2). The basis for the excited utterance exception is a psychological one, namely, the fact that when an individual is in the grip of a violent emotion, excitement, or pain, he ordinarily loses the capacity for reflection necessary to the fabrication of falsehood, and the "truth will come out." *Zuliani,* 97 S.W.3d at 595. In determining whether a hearsay statement is admissible as an excited utterance, the critical determination is whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event or condition at the time of the statement. *Id.* at 595–96. Based on our review of Exhibit 36, we conclude the statements made by Brownfield were related to a startling event, *i.e.* her assault, and were

---

**3.** The State's appellate brief provides no response to appellant's argument regarding this sub-issue.

made at a point in time when Brownfield was in an extremely excited emotional state as a direct result of the event. The trial court did not abuse its discretion in overruling appellant's hearsay objection to State's Exhibit 36.

Because we conclude the statements of Brownfield recorded on the 9–1–1 tape fall within the excited utterance exception to the hearsay rule and are not testimonial, we hold that the trial court did not err by admitting State's Exhibit 36 into evidence during the punishment phase of appellant's trial.

### 4. Brownfield's Statements to Deputy Russell

■ During the punishment phase of appellant's trial, Deputy Russell testified he was dispatched to Brownfield's residence on the night of September 20, 2004 in response to a 9–1–1 call reporting an assault. The record does not indicate the amount of time that passed between Brownfield's 9–1–1 call and Russell's arrival at her residence. Russell testified Brownfield was "very upset and scared," and had a "baseball-sized knot underneath her right eye." Russell further testified Brownfield was "worried about her front door not being able to be locked and the suspect coming back to her and bothering her." Based on this testimony, the State argues that Brownfield's statements to Russell were not testimonial. Rather, the State contends, Russell's questions and Brownfield's responses allowed Russell to evaluate the risk of harm and "resolve the situation."

While Russell's conversation with Brownfield may have begun as an interrogation to determine the need for emergency assistance, it quickly evolved into a police investigation conducted for the primary purpose of collecting information for a future prosecution. *See Davis,* 126 S.Ct.

at 2277, 2279 (stating "initial inquiries" made by officers at the scene may produce non-testimonial statements; however, a conversation which begins as an interrogation to determine the need for emergency assistance may "evolve into testimonial statements"). Russell testified the assailant was not present at Brownfield's residence when he arrived, and Brownfield stated she had been assaulted "somewhere on I–45." Russell testified that Brownfield stated she had been assaulted by her boyfriend, Gerald Jackson,[4] and provided a physical description of the assailant. Russell further testified that Brownfield stated the assailant struck her face several times with his closed fist and with a cellular telephone. Russell testified he collected information from Brownfield to provide to the district attorney, and filled out paperwork for an emergency protective order while still at Brownfield's residence. The fact that Russell was filling out paperwork and gathering detailed information for the district attorney indicates he was neither "assessing and securing the scene" nor primarily concerned with the immediate safety of himself or Brownfield. *Ruth,* 167 S.W.3d at 569; *see also Wall,* 184 S.W.3d at 742 n. 42. Russell further testified that based on information he provided to the district attorney, assault charges were filed against the assailant that night.

Under the facts of this case, we find the circumstances surrounding Deputy Russell's interrogation of Brownfield at her residence objectively indicate that there was no ongoing emergency, and the primary purpose of the interrogation was to gather information about past events potentially relevant to a later criminal prosecution. *See Davis,* 126 S.Ct. at 2273–74. We further find that an objectively reasonable declarant in Brownfield's shoes would

---

**4.** The jury heard evidence that appellant used the name Gerald Jackson as an alias.

have appreciated the fact that Russell was conducting a criminal investigation and collecting evidence for a prospective prosecution. *See id.* at 2272, 2278; *Wall,* 184 S.W.3d at 744–45. Accordingly, Brownfield's statements to deputy Russell were testimonial. *See Davis,* 126 S.Ct. at 2278. Because appellant did not have a prior opportunity to cross-examine Brownfield, we hold that the trial court erred in admitting Deputy Russell's testimony regarding statements made to him by Brownfield on September 20, 2004, and the trial court's error was a violation of appellant's right to confrontation under the Sixth Amendment to the United States Constitution. *See Crawford,* 541 U.S. at 68, 124 S.Ct. at 1374.

■■■■ Although the trial court erred in admitting this evidence, we nevertheless will affirm if we determine beyond a reasonable doubt that the harm from the error did not contribute to appellant's punishment. Tex.R.App. P. 44.2(a); *Grant,* 218 S.W.3d at 233. In determining whether error in admitting testimonial statements in violation of *Crawford* is harmless beyond a reasonable doubt, we consider: (1) the importance of the testimonial statements to the State's case; (2) whether the statements were cumulative of other evidence; (3) the presence or absence of evidence corroborating or contradicting the statements on material points; and (4) the overall strength of the State's case. *Grant,* 218 S.W.3d at 233. The error does not require reversal unless there is a reasonable probability that the *Crawford* error, within the context of the entire trial, moved the jury from a state of non-persuasion to one of persuasion on a particular issue. *Id.*

Utilizing this test, we hold that the error was harmless beyond a reasonable doubt. First, Deputy Russell's testimony was not important to the State's case. The vast majority of the State's evidence during the punishment phase of appellant's trial focused on appellant's numerous prior criminal convictions and the testimony of the Complainant, Priscilla Smith. Further, the majority of Russell's testimony was cumulative of, and corroborated by, the properly admitted evidence of Brownfield's statements during the 9–1–1 call, which were recorded on State's Exhibit 36.

The State presented compelling evidence during the punishment phase of appellant's trial. The State's fingerprint expert identified appellant as the individual convicted and sentenced in five prior criminal judgments, certified copies of which were admitted into evidence. The judgments show appellant was previously convicted of four felonies and one misdemeanor, including aggravated assault with a deadly weapon, aggravated assault, assault of a family member, and two convictions for possession of cocaine. This evidence was uncontroverted, and the jury found both of the State's enhancement allegations to be true.

The Complainant testified during the punishment phase and described in detail how she suffered at the hands of appellant. The Complainant testified appellant was extremely jealous and controlling, and he hit her and slapped her on several occasions. The Complainant testified appellant assaulted her in a variety of ways, including hitting her with a belt, pushing her against a door, and repeatedly hitting her head against a table. The improperly admitted testimonial statements of Brownfield are, by comparison with the strength and volume of the properly admitted evidence, inconsequential. In light of the evidence properly before the jury, there is no reasonable probability that the testimonial statements moved the jury from a state of non-persuasion to one of persuasion with regard to appellant's punishment.

Appellant's first issue is overruled.

## CONCLUSION

Having considered and overruled each of appellant's issues on appeal, we affirm the judgment of the trial court.

FROST, J., Concurring.

KEM THOMPSON FROST, Justice, concurring.

Under Texas Rule of Evidence 702, Officer Bray qualifies as an expert in law enforcement,[1] but his law-enforcement experience and training do not qualify him as an expert in the field of family violence dynamics or the behavioral propensity of abuse victims to return to their abusers post-assault. For this reason, Officer Bray should not have been permitted to testify regarding these matters. Even though the court finds no error, it nevertheless reaches the proper result in overruling appellant's second issue and in affirming the trial court's judgment. Therefore, I respectfully concur in this court's judgment.

**Qualifications of Experts in the Field of Family Violence Dynamics or the Behavioral Propensity of Abuse Victims to Return to Their Abusers Post–Assault**

To testify as an expert, a witness must possess scientific, technical, or other specialized knowledge that will assist a factfinder, and the witness must be qualified as an expert by knowledge, skill, experience, training, or education. TEX. R. EVID. 702; *Jensen v. State*, 66 S.W.3d 528, 542 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd). An expert witness must qualify as an expert in the relevant field by reason of his knowledge, skill, experience, training, or education. *See* TEX. R. EVID. 702; *Alvarado v. State*, 912 S.W.2d 199, 215–16 (Tex.Crim.App.1995). Under Rule 702, Officer Bray, through his experience in law enforcement and training at

the police academy, qualified as an expert in law enforcement and law enforcement responses to family violence. But the testimony in dispute is not within this field. Instead, the evidence in issue is Officer Bray's testimony regarding the behavioral dynamics of victims of family violence, which is a subject beyond his field of expertise as a police officer.

An offering party must establish that an expert holds the requisite knowledge, experience, skill, training, or education regarding a specific issue, which, in turn, qualifies the expert to give an opinion on that particular subject. *Broders v. Heise*, 924 S.W.2d 148, 153 (Tex.1996). Additionally, law enforcement officers are not qualified by position alone to render some expert opinions. *See Pyle v. S. Pac. Transp. Co.*, 774 S.W.2d 693, 695 (Tex.App.-Houston [1st Dist.] 1989, pet. denied) (holding that a trial court did not err in excluding expert testimony regarding accident reconstruction from a police officer who held eight years of service, received training at a police academy, and attended a seminar focusing on accident reconstruction). Often, the special knowledge that qualifies a witness to give expert testimony is derived by combining experience, education, or studies of technical works. *See* TEX. R. EVID. 702; *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex.Crim.App.2000). In this case, Officer Bray had specialized knowledge in law enforcement gleaned both from experience on the job and training at the police academy, and insofar as he offered testimony as an expert regarding law enforcement responses to family violence, the trial court correctly permitted him to testify. But Officer Bray's police training and on-the-job experience, whether considered alone or together, do not equate to training, experience, education, or knowledge

---

1. *See* TEX. R. EVID. 702.

gained through special study, degrees, or experience in the fields of sociology or psychology. The record simply does not show that Officer Bray is qualified to speak as an expert beyond his work as a police officer responding to calls of family violence. Though his experience and training, as reflected in the record, are sufficient to qualify him as an expert in law enforcement, the record contains no evidence of his qualifications, if any, to testify as an expert in behavioral propensity of family violence victims post-assault.

Furthermore, the subject matter for which Officer Bray's opinion was offered is beyond Officer Bray's field of expertise as a police officer. *See* TEX. R. EVID. 702; *Alvarado*, 912 S.W.2d at 215–16. Testimony regarding the dynamics of domestic violence is subject matter reserved for an expert. *See Harris v. State*, 133 S.W.3d 760, 774 (Tex.App.-Texarkana 2004, pet. ref'd) ("Such specialized testimony [regarding a cycle of domestic violence] is the very essence of expert testimony."). However, an expert's qualifications and expertise must go to the matter on which the expert proffers an opinion. *Penry v. State*, 903 S.W.2d 715, 762 (Tex.Crim.App. 1995) (providing that a party proffering an expert witness must establish that the witness is qualified on the specific matter in question). Often, those who provide expert testimony on subject matter involving the behavior of victims are psychologists, psychotherapists, or others with specialized training in human behavioral characteristics and conduct. *See Fielder v. State*, 756 S.W.2d 309, 320–21 (Tex.Crim. App.1988) (holding that psychologist's expert testimony is admissible to explain the conduct of women who endure abusive relationships), *Harris*, 133 S.W.3d at 774–75 (providing that when an assistant district attorney, who was an expert on protective orders as well as a former nurse, testified on the "cycle of domestic violence," she

was not a lay witness, but rather an expert witness to the extent that her testimony explained why victims abandon procedures for protective orders); *see also Perez v. State*, 113 S.W.3d 819, 832–35 (Tex.App.-Austin 2003, pet. ref'd) (holding that trial court did not abuse its discretion in concluding that psychologist was qualified to give expert testimony regarding the behavioral characteristics of sexually abused children); *Hitt v. State*, 53 S.W.3d 697, 707 (Tex.App.-Austin 2001, pet. ref'd) (explaining that a psychotherapist's expert testimony regarding children's behavioral characteristics after sexual abuse is admissible). Although the subject matter involving behavioral propensity merits expert testimony, any such testimony should come from a qualified expert. Officer Bray, despite his extensive experience and training in law enforcement, lacks the expert qualifications to discuss this subject matter traditionally reserved for psychologists and psychotherapists.

A trial court's determination of a witness's qualifications will not be overturned absent an abuse of discretion. *Morales v. State*, 32 S.W.3d 862, 865 (Tex.Crim.App. 2000). The record contains no evidence to show Officer Bray had the qualifications to testify on the particular subject matter of the behavioral propensity of victims who return to abusers post-attack. Therefore, the trial court abused its discretion in permitting Officer Bray to testify as an expert regarding victims' behavioral propensities post-attack. *See Perez v. State*, 25 S.W.3d 830, 838 (Tex.App.-Houston [1st Dist.] 2000, no pet.) (holding that trial court abused its discretion in admitting expert testimony when expert was not qualified in that specific field). The error, however, is not reversible.

**Harm Analysis**

A violation of evidentiary rules that results in the erroneous admission of evi-

dence is non-constitutional error under Texas Rule of Appellate Procedures 44.2(a). TEX. R. APP. P. 44.2(a); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim.App.1998). A reviewing court should disregard any non-constitutional error that does not affect substantial rights. TEX. R. APP. P. 44.2(b); *Johnson v. State*, 43 S.W.3d 1, 4 (Tex.Crim.App.2001); *Johnson*, 967 S.W.2d at 417 (explaining that where error did not influence the jury, appellant's substantial rights are not affected). Criminal convictions are not to be overturned for non-constitutional error if the reviewing court, upon examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect. *Johnson*, 967 S.W.2d at 417. Considering the record as a whole, it may be said with fair assurance that Officer Bray's testimony did not influence the jury or had but slight effect on the jury's punishment verdict. TEX. R. APP. P. 44.2(b); *see Johnson*, 967 S.W.2d at 417. Thus, under the non-constitutional harm analysis, the trial court's error in admitting Officer Bray's testimony regarding the behavioral propensity of family violence victims was harmless. *See* TEX. R. APP. P. 44.2(b); *Bonner v. State*, No. 14–96–01542–CR, 1999 WL 212163, at *2 (Tex. App.-Houston [14th Dist.] Apr. 8, 1999, no pet. h.) (concluding that any error in admitting unqualified expert testimony of a police officer was harmless) (not designated for publication). Because the error provides no basis for reversal on this issue, this court reaches the correct result in overruling appellant's second issue, and affirming the trial court's judgment.