# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00558-CR

**Dwaine Colbert, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. D-1-DC-16-300837, THE HONORABLE KAREN SAGE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Dwaine Colbert of two counts of aggravated robbery. *See* Tex. Penal Code §§ 29.02, 29.03.  Appellant elected to have the trial court decide his punishment, *see* Tex. Code Crim. Proc. art. 37.07(2)(b), and the trial judge assessed appellant's punishment, enhanced pursuant to the repeat offender provision of the Penal Code, at confinement for 20 years in the Texas Department of Criminal Justice for each count, *see* Tex. Penal Code § 12.42(c)(1), and ordered the sentences to be served concurrently, *see id.* § 3.03(a).  In a single point of error on appeal, appellant complains about the trial court's admission of a recording of a 911 call.  We find no error in the admission of the evidence.  However, we have found non-reversible clerical error in the written judgments of conviction.  We will modify the judgments to correct the error and, as modified, affirm the trial court's judgments of conviction.

## BACKGROUND[1]

On October 2, 2015, at approximately 2:00 in the morning, My Vo and Cecilia Garcia drove into the apartment complex where Garcia's boyfriend lived. Garcia, who was driving Vo's car, entered the gated community and pulled into a parking space. When the women opened the car doors to get out, two men approached the car and "tried to attack [them]." One approached Garcia on the driver's side; the other approached Vo on the passenger's side. The man who approached Vo pushed her back into her seat and demanded her "stuff." After a struggle, he pulled Vo's clutch purse and her phone out of her hands and ran away. The man who had approached Garcia did not obtain any property from Garcia and ran away with Vo's assailant. After the men fled, the women got back into the car and drove around the apartment complex while they called 911 from Garcia's phone.

Police officers arrived at the apartment complex within ten minutes of the 911 call. The responding officers testified at trial, indicating that both women appeared intoxicated and "pretty distraught" when describing the incident. Each of the women gave a description of her assailant. The officer who talked with Vo said that she informed him that she was not injured and no threats were made but that she feared that she would be raped.[2] The officer who spoke with Garcia said that

---

[1] Because the parties are familiar with the facts of the case, its procedural history, and the evidence adduced at trial, we provide only a general overview of the facts of the case here. We provide additional facts in the opinion as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4. The facts recited are taken from the testimony and other evidence presented at trial.

[2] In her testimony, Vo said that she was afraid that she and Garcia were going to be kidnapped or raped. She was unable to recall if the man who approached her was armed, indicating that the incident happened quickly and she "didn't pay attention" to whether the man had a gun.

2

she was inconsistent about whether the assailants were armed: first saying that a gun was involved, then saying that a knife was involved, then saying that no weapon was involved, and then again saying that a knife was involved. That officer also testified about the latent prints he recovered from the car. Subsequent testimony from a latent print examiner revealed that one of the latent prints recovered from the window on the passenger door of the car, where Vo was robbed, matched the right index finger of appellant.

The detective from the robbery unit of the police department also testified at trial, describing his investigation. He indicated that neither Vo nor Garcia were able to identify their assailants in a photo line-up. However, the detective discovered that Vo's credit card had been used at Walmart and at a convenience store shortly after the robbery. Surveillance video from these stores captured the images of the men involved in using Vo's credit card. The images were released to the media to identify the men. The investigation eventually yielded three suspects. Appellant was identified as one of the suspects. One of the other suspects named appellant as the one who robbed Vo. That suspect testified on behalf of the State at trial pursuant to a plea agreement. In his testimony he described appellant pointing a gun at Vo during the incident, stating that appellant held the gun "downwards towards the woman on the passenger's side"; indicated that the third suspect, the man who approached Garcia, did not have a weapon; and admitted that he had a knife, which he described as a small multi-tool with the knife blade displayed, in his hand during the incident.

The jury found appellant guilty of two counts of aggravated robbery as defined in sections 29.02(a)(2) and 29.03(a)(2) of the Penal Code: Count I for the robbery against Garcia and Count II for the robbery against Vo. The trial proceeded to the punishment phase before the court.

3

The State offered evidence of appellant's prior criminal history, which included an Oklahoma conviction for robbery with a firearm and a federal conviction for theft from a bank. The trial judge assessed appellant's punishment at 20 years' confinement for each count and ordered the sentences to be served concurrently.

## DISCUSSION

The record reflects that the 911 call made by the women was initiated by Vo, who then gave the phone to Garcia. Garcia put the call on speaker so both women could listen. After taking the phone from Vo, Garcia is the one who answered the 911 operator's questions until Vo rejoined the conversation to provide a description of her car. The State offered a recording of the 911 call during Vo's testimony at trial. Garcia did not testify at trial.

Appellant objected to the admission of the recording, claiming that he was being denied the right of confrontation.[3] Specifically, appellant objected to Garcia's statements about whether the assailants had weapons. In response to appellant's confrontation objection, the prosecutor argued that, under *Davis v. Washington*, Garcia's statements during the 911 call were not testimonial because there was an ongoing emergency. Appellant disputed that the facts reflected an ongoing emergency. Ultimately, the trial court found that, given the circumstances, there was still an ongoing emergency and, thus, concluded that Garcia's statements were "nontestimonial in

---

[3] Appellant also objected to the 911 recording because it was "bolstering" (since Vo had already testified about the incident) and because it was hearsay. The trial court did not rule on appellant's bolstering objection, overruled appellant's hearsay objection, and sought a response from the State concerning appellant's confrontation objection. Appellant raises only the confrontation issue in this appeal.

nature." Accordingly, the court overruled appellant's confrontation objection and admitted the recording of the 911 call.

In his sole point of error, appellant contends that the trial court erred in admitting Garcia's out-of-court statements made during the 911 call because the statements were testimonial and, therefore, their admission violated the Confrontation Clause since he never had the opportunity to cross examine Garcia about them.

## Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018); *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016); *Sandoval v. State*, 409 S.W.3d 259, 297 (Tex. App.—Austin 2013, no pet.). An abuse of discretion does not occur unless the trial court acts "arbitrarily or unreasonably" or "without reference to any guiding rules and principles." *State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016) (quoting *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). Further, we may not reverse the trial court's ruling unless the determination "falls outside the zone of reasonable disagreement." *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016); *see Henley*, 493 S.W.3d at 83 ("Before a reviewing court may reverse the trial court's decision, 'it must find the trial court's ruling was so clearly wrong as to lie outside the zone within which reasonable people might disagree.'" (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008))). An evidentiary ruling will be upheld if it is correct on any theory of law applicable to the case. *Henley*, 493 S.W.3d at 93; *Sandoval*, 409 S.W.3d at 297.

**Right of Confrontation**

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI; *see Pointer v. Texas*, 380 U.S. 400, 403 (1965); *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008). This procedural guarantee bars the admission of testimonial statements of a witness who does not appear at trial unless the witness is unavailable and the defendant had a prior opportunity to cross examine the witness. *Bullcoming v. New Mexico*, 564 U.S. 647, 658 (2011); *Crawford v. Washington*, 541 U.S. 36, 59 (2004); *De La Paz*, 273 S.W.3d at 680. This limitation applies only to testimonial statements. *Davis v. Washington*, 547 U.S. 813, 821 (2006). "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Id.* Only testimonial statements cause the "declarant" to be a "witness" within the meaning of the Confrontation Clause. *Id.* (citing *Crawford*, 541 U.S. at 51). Thus, the Confrontation Clause does not bar the admission of nontestimonial hearsay. *Michigan v. Bryant*, 562 U.S. 344, 354 (2011); *Sanchez v. State*, 354 S.W.3d 476, 485 (Tex. Crim. App. 2011). The threshold question in determining whether the trial court erred in admitting hearsay evidence in violation of the Confrontation Clause, therefore, is whether the evidence is testimonial in nature. *Sanchez*, 354 S.W.3d at 485; *Woods v. State*, 152 S.W.3d 105, 113 (Tex. Crim. App. 2004).

Whether a statement is testimonial or nontestimonial depends on the surrounding circumstances in which it was made. *See Bryant*, 562 U.S. 359; *Davis*, 547 U.S. at 822. The determination hinges on the "primary purpose" of the interview or interrogation eliciting the

6

statement.  *Bryant*, 562 U.S. 359; *De La Paz*, 273 S.W.3d at 680.  The United States Supreme Court has explained,

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.  They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis*, 547 U.S. at 822 (footnote omitted); *see Burch v. State*, 401 S.W.3d 634, 636 (Tex. Crim. App. 2013) (observing that testimonial statements are those "that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" (quoting *Crawford*, 541 U.S. at 52)).  When the primary purpose of the questioning is something other than criminal investigation, "the Confrontation Clause does not require such statements to be subject to the crucible of cross-examination." *Bryant*, 562 U.S. at 361.  The focus is on the objective purpose of the interview or interrogation, not the declarant's expectations. *Davis*, 547 U.S. at 822–23; *Coronado v. State*, 351 S.W.3d 315, 324 (Tex. Crim. App. 2011); *De La Paz*, 273 S.W.3d at 680.

The determination of whether a particular out-of-court statement is testimonial is "a question of law." *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010); *De La Paz*, 273 S.W.3d at 680; *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).  Thus, although we defer to the trial court's resolution of credibility issues and historical fact, we review de novo the ultimate constitutional question of whether the facts as determined by the trial court establish that

7

an out-of-court statement is testimonial (or nontestimonial). *Langham*, 305 S.W.3d at 576; *Wall*, 184 S.W.3d at 742.

Calls to 911 are usually intended to describe current circumstances requiring emergency assistance. For this reason, typical 911 calls initiated to summon police assistance are generally nontestimonial because they are "a cry for help" or "the provision of information enabling officers to end a threatening situation." *Davis*, 547 U.S. at 832; *accord Cook v. State*, 199 S.W.3d 495, 498 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *see Rodgers v. State*, No. 09-09-00359-CR, 2010 WL 3043705, at *2 (Tex. App.—Beaumont Aug. 4, 2010, no pet.) (mem. op., not designated for publication) (compiling cases concluding that 911 calls are nontestimonial). However, calls to 911 may become testimonial when made under circumstances that would cause an objective witness to believe there was no ongoing emergency and that the statement was made in the course of an investigation for the purpose of establishing facts relevant to later criminal prosecution. *See Davis*, 547 U.S. at 822; *see, e.g.*, *Hereford v. State*, 444 S.W.3d 346, 351–52 (Tex. App.—Amarillo 2014, no pet.) (statements made by anonymous caller reporting narcotics trafficking activity in motel room did not evince ongoing emergency and were therefore deemed testimonial).

Appellant contends that because the assailants had already fled before the 911 call was made, the emergency was over. However, "[a]n assessment of whether an emergency that threatens the police and public is ongoing cannot narrowly focus on whether the threat solely to the first victim has been neutralized because the threat to the first responders and public may continue." *Bryant*, 562 U.S. at 363. "To determine whether the 'primary purpose' of an interrogation is 'to enable police assistance to meet an ongoing emergency,' which would render the resulting statements

8

nontestimonial, we objectively evaluate the circumstances in which the encounter occurs and the statements and actions of the parties." *Id.* at 359 (quoting *Davis*, 547 U.S. at 822). "[W]hether an emergency exists and is ongoing is a highly context-dependent inquiry." *Id.* at 363.

The 911 call at issue here was initiated by Vo and Garcia, not by police officers or investigators. The interview was informal in that it was not conducted in a formal setting, such as a police interrogation room. The call occurred immediately after the women experienced being threatened by assailants and having their personal property forcibly taken—Vo told the 911 operator that the incident had "just happened right now." Furthermore, the communication was spontaneous, not deliberately recounted.[4] The 911 operator had to repeat several questions multiple times in order to get an answer from Garcia, including whether the assailants fled on foot or in a car, what direction they went, and if they had weapons. Additionally, the questions asked by the 911 operator—and the answers given by Garcia—were of the kind necessary to supply the responding officers with the information needed to locate the victims, possibly apprehend the assailants, and respond appropriately to the potential threat to safety. Garcia's statements to the 911 operator enabled law enforcement "to know whom they are dealing with in order to assess the situation, the threat to their own safety, and possible danger to the potential victim" or the public.[5] *See Davis*, 547 U.S. at 832.

"[T]he most important instances in which the [Confrontation] Clause restricts the introduction of out-of-court statements are those in which state actors are involved in a formal,

---

[4] Appellant noted the "confused" nature of Garcia's statements when arguing his objection.

[5] As the trial court indicated, the statements about whether the assailants had weapons were "directly relevant for law enforcement purposes" because "[t]hat's the number one thing law enforcement has to know. If somebody is reporting a recent flight of a defendant, they need to know what those -- what that defendant has in the way of any kind of weapon."

9

out-of-court interrogation of a witness to obtain evidence for trial." *Bryant*, 562 U.S. at 358. Such was not the situation here. The objective circumstances indicate that the 911 call was made for the purpose of reporting a crime, namely the robbery incident and the flight of armed assailants, and to obtain police assistance. *See Davis*, 547 U.S. at 827 (discussing various factors that contributed to court's conclusion that statements made during 911 call were nontestimonial). Thus, the circumstances "objectively indicat[e] that the primary purpose of the interrogation [was] to enable police assistance to meet an ongoing emergency." *Id.* at 822; *see, e.g.*, *Dixon v. State*, 244 S.W.3d 472, 484–85 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (911 caller who reported that her boyfriend had just assaulted her in her car was seeking immediate police assistance, not making formal statement for later use); *Garcia v. State*, 212 S.W.3d 877, 883–84 (Tex. App.—Austin 2006, no pet.) (after calling 911 to report child kidnapping, assault victim's statements to responding officer—that her husband had assaulted her, forcibly taken their child, and was still at large—concerned ongoing emergency); *Cook*, 199 S.W.3d at 496–97 (excited observer called 911 to report potential crime after defendant threw beer bottle at caller's truck).

On the facts of this case, we conclude that the contested 911 statements were nontestimonial in nature and their admission did not violate the Confrontation Clause. Accordingly, we find no abuse of discretion in the trial court's decision to admit the recording of the 911 call. We overrule appellant's sole point of error.

### Clerical Error in Judgments

However, we observe that the trial court's written judgments of conviction in this case contain non-reversible clerical error. Each judgment reflects that the plea to the first enhancement

paragraph was not applicable ("N/A"). The judgments likewise reflect that the finding on the enhancement paragraph was not applicable ("N/A"). The record, however, reflects that, at the beginning of the punishment hearing, appellant entered a plea of "True" to the first enhancement paragraph in the *State's Notice of Prior Felony Conviction for Enhancement of Punishment*. The trial court explicitly accepted appellant's plea of true and implicitly found the allegation to be true, indicating that "we have a plea of true" and narrating the enhanced punishment range, stating that "we're agreed that the punishment is 15 to 99 or life."

This Court has authority to modify incorrect judgments when the necessary information is available to do so. *See* Tex. R. App. P. 43.2(b) (authorizing court of appeals to modify trial court's judgment and affirm it as modified); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993) (concluding that Texas Rules of Appellate Procedure empower courts of appeals to reform judgments). Accordingly, we modify the judgments of conviction to reflect that appellant's plea to the "1st Enhancement Paragraph" was "TRUE" and to reflect that the finding on the "1st Enhancement Paragraph" was "TRUE."

**CONCLUSION**

Having concluded that the trial court did not abuse its discretion by admitting the recording of the 911 call but having found non-reversible clerical error in the written judgments of conviction, we modify the judgments as noted above to correct the clerical error and affirm the trial court's judgments of conviction as modified.

_____

Edward Smith, Justice

Before Justices Goodwin, Baker, and Smith

Modified and, as Modified, Affirmed

Filed:   March 7, 2019

Do Not Publish