**Affirmed and Memorandum Opinion filed May 2, 2013.**



In the

# Fourteenth Court of Appeals

---

### NO. 14-12-00297-CR

---

**REGINALD TYRONE LOVILLE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Cause No. 1335342**

---

## M E M O R A N D U M   O P I N I O N

Appellant Reginald Tyrone Loville was convicted by a jury of robbery. On appeal, he presents five issues: (1) whether the trial court violated appellant's confrontation clause right during the punishment phase by admitting testimonial hearsay; (2) whether the trial court committed reversible error by not allowing appellant to ask certain venire members a particular question during voir dire; (3) whether the jury charge violated appellant's right to a unanimous jury verdict; (4)

whether the trial court committed reversible error by including surplusage in the jury charge that negated the mental state required to commit robbery by threat; and (5) whether the evidence is legally insufficient to support appellant's conviction for robbery by threat. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant was indicted for the felony offense of robbery, alleged to have been committed on or about May 21, 2011.

At trial, the complainant Lisa Madrid, an asset protection coordinator employed by Wal-Mart, testified that on May 21, 2011, she followed appellant, a suspected thief, toward the store's garden center exit. Appellant was pushing a shopping cart filled with unboxed monitors and a flat-screen television. Madrid approached appellant in an attempt to stop him from exiting the store. According to Madrid, when she grabbed appellant's cart, she saw a stun gun or taser "on the left side of his hand[sic]." Madrid also heard "the buzzing sound of the taser." Madrid testified that when she saw and heard the taser, she "was scared of being hurt." Appellant then thrust at Madrid with the taser and made contact "on the side of [her] leg." As Madrid jumped back, one of her co-workers was attempting to follow appellant to a vehicle in order to get the license plate number. Madrid tried to tell her co-workers and "everybody" to "stay back because [appellant] had a weapon." Appellant also "tased" a Wal-Mart customer who was attempting to prevent appellant from loading the television into the vehicle. Later, Madrid realized that she had been shocked when she felt her "pocket was burning her leg." When Madrid retrieved her cell phone from her pocket, the phone was "steaming" hot, she saw "smoke" when she flipped open the phone, and two numbers on the pad were melted.

Based on the license plate information, Officer Hardy with the Houston

2

Police Department's robbery division determined that the vehicle was a white Pontiac Sunfire; Reginald Loville was listed on the purchase agreement. Police then discovered that the Sunfire had been repossessed. Further investigation by Detective Braune, the division officer assigned to lead this case, resulted in appellant's arrest. When appellant was arrested, he had a taser in his pants pocket.

According to the jury charge, which tracked the indictment, the jury could convict appellant of robbery if it found that appellant, while in the course of committing theft of property owned by Madrid, and with intent to obtain or maintain control of the property, intentionally or knowingly threatened or placed Madrid in fear of imminent bodily injury or harm: by threatening to shock Madrid with an electroshock weapon; by attempting to shock Madrid with an electroshock weapon; by threatening to shock Madrid with a stun gun; or by attempting to shock Madrid with a stun gun. The jury returned a verdict of guilty.

During the punishment phase, appellant pleaded true to two prior felony enhancement paragraphs for robbery and cocaine possession. The State presented evidence of appellant's other prior convictions, including four for theft, two for burglary of a motor vehicle with intent to commit theft, burglary of a vehicle, three for unauthorized use of a motor vehicle, possession of a controlled substance with intent to deliver, delivery of a simulated controlled substance, evading arrest, and resisting arrest. Both Hardy and Braune testified regarding their involvement in an investigation of approximately ten robberies occurring within a one-week period in May 2011; the May 21 incident for which appellant was on trial was the "master" case. According to the officers, almost all the robberies under investigation involved a white Pontiac Sunfire, most involved a suspect fitting appellant's description, and approximately seven involved use of a taser. The State also presented testimony from various individuals, including Wal-Mart and Sam's Club

store employees and managers, as well as other victims, regarding the string of robberies occurring during that same time period in May. Some of these individuals identified appellant as the perpetrator, while others provided testimony regarding the involvement of a white Pontiac Sunfire and/or a taser. The trial court provided a limiting instruction indicating that the State was required to prove appellant's involvement in any extraneous offenses beyond a reasonable doubt. The jury assessed appellant's punishment at life in prison.

On appeal, appellant presents the following issues: (1) whether the trial court violated his confrontation clause right by allowing testimonial hearsay during the punishment phase; (2) whether the trial court committed reversible error by not allowing appellant to ask certain venire members an additional question during voir dire; (3) whether the jury charge violated appellant's right to unanimity; (4) whether the jury charge included surplusage that improperly negated the mental state required for robbery by threat; and (5) whether the evidence is legally insufficient to support appellant's conviction for robbery by threat.

## II.    ANALYSIS

### A. Legal sufficiency of evidence to support robbery by threat

We address appellant's fifth issue first because, if sustained, it would require us to reverse and render an acquittal, not remand for a new trial and/or a new punishment phase, as would appellant's other issues. *See Campbell v. State*, 125 S.W.3d 1, 5 n.1 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

#### 1.  Standard of review

In evaluating a legal insufficiency claim attacking a jury's finding of guilt, we review all the evidence in the light most favorable to the verdict. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Burton v. State*, 230 S.W.3d 846, 852 (Tex.

4

App.—Houston [14th Dist.] 2007, no pet.). We do not ask whether we believe the evidence at trial established guilt beyond a reasonable doubt, but instead we only determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 318–19; *Burton*, 230 S.W.3d at 852. We accord great deference "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *Burton*, 230 S.W.3d at 852. The legal sufficiency of the evidence is a question of law, and we may not overturn the verdict unless it is irrational or unsupported by proof beyond a reasonable doubt. *See Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

Legal "sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). That is, "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which [appellant] was tried." *Id.* This standard "ensures that a judgment of acquittal is reserved for those situations in which there is an actual failure in the State's proof of the crime rather than a mere error in the jury charge submitted." *Id.*[1] We apply the *Jackson* standard of review to the hypothetically correct jury charge. *Adames v. State*, 353 S.W.3d 854, 861 (Tex. Crim. App. 2011), *cert. denied*, 132 S. Ct. 1763 (2012).

### 2. Section 29.02(a)(2)

An individual commits a robbery if, in the course of committing a theft, he "(1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2)

---

[1] We discuss (and overrule) appellant's jury charge issues *infra* in Section II.C.

intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." TEX. PENAL CODE ANN. § 29.02(a) (West 2012). In this case, the indictment did not allege that appellant caused bodily injury to Madrid under section 29.02(a)(1), but rather that appellant intentionally and knowingly threatened and placed Madrid in fear of imminent bodily injury and death under section 29.02(a)(2). For purposes of section 29.02(a)(2), "[s]o long as the defendant's actions are 'of such nature as in reason and common experience is likely to induce a person to part with his property against his will,' any actual or perceived threat of imminent bodily injury will satisfy this element of the offense." *Howard v. State*, 333 S.W.3d 137, 138 (Tex. Crim. App. 2011) (footnote omitted and quoting *Cranford v. State*, 377 S.W.2d 957, 958 (Tex. Crim. App. 1964)).

In addition, the indictment described how appellant allegedly threatened and placed Madrid in fear: by threatening to shock Madrid with an electroshock weapon, by attempting to shock Madrid with an electroshock weapon, by threatening to shock Madrid with a stun gun, and by attempting to shock Madrid with a stun gun. Therefore, in this case, a hypothetically correct jury charge—one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which appellant was tried[2]—would allow the jury to convict appellant of robbery if, in the course of committing a theft, appellant intentionally or knowingly threatened or placed Madrid in fear of imminent bodily injury or death[3] by manner

---

[2] *Malik*, 953 S.W.2d at 240.

[3] In the indictment, the State may allege robbery under section 29.02(a)(2) in the conjunctive; however, the charge properly may instruct the jury in the disjunctive because proof of either "intentionally or knowingly" "threaten[ing] or plac[ing] another in fear" of "imminent bodily injury or death" will sustain the conviction. *See Vaughn v. State*, 634 S.W.2d 310, 312 (Tex. Crim. App. 1982).

or means of appellant's conduct involving an electroshock weapon or stun gun.[4] *See* TEX. PENAL CODE ANN. § 29.02(a)(2).

### 3. The evidence is legally sufficient to support that appellant threatened or placed Madrid in fear.

Appellant argues the evidence is legally insufficient to support his conviction with regard to the threaten-or-place-in-fear element. Appellant emphasizes that Madrid did not testify as to whether appellant "ever spoke or threateningly brandished his stun gun before attempting to shock her." Appellant contends that the jury was not presented with any proof that appellant actually threatened Madrid, only that appellant "attempted to physically assault those attempting to hinder his escape." That is, while appellant's conduct may have been an attempted bodily-injury assault to qualify as robbery under section 29.02(a)(1), it was not an assault by threat to qualify as robbery under section 29.02(a)(2). We disagree.

The Court of Criminal Appeals recently interpreted the threaten-or-place-in-fear element of section 29.02(a)(2):

> The plain language of the statute encompasses not just explicit threats, but whatever implicit threats may lead to the victim being placed in fear. So long as the defendant's actions are "of such nature as in reason and common experience is likely to induce a person to part with his property against his will," any actual or perceived threat of imminent bodily injury will satisfy this element of the offense.

*Howard*, 333 S.W.3d at 138 (footnotes omitted, quoting *Cranford*, 377 S.W.2d at 958, and citing *Olivas v. State*, 203 S.W.3d 341, 345–46 (Tex. Crim. App. 2006)). A threat need not be expressly voiced; it can be communicated by the accused's

---

[4] Although section 29.02(a)(2) does not require any particular manner or means for the commission of robbery by threat, we include the alleged electroshock weapon or stun gun involved "to give the defendant adequate notice of the charge against him so as to meaningfully defend himself." *See Gollihar v. State*, 46 S.W.3d 243, 256 (Tex. Crim. App. 2001).

actions or conduct. *McGowan v. State*, 664 S.W.2d 355, 357 (Tex. Crim. App. 1984). In determining whether a defendant has threatened another, the crucial inquiry is whether the accused acted in such a manner as would, under the circumstances, portend an immediate threat of danger to a person of reasonable sensibility. *Olivas*, 203 S.W.3d at 347. "Proving robbery by showing the defendant placed another in fear does not require an actual threat." *Burton*, 230 S.W.3d at 852. "We must look to the circumstances surrounding the robbery to determine if appellant's conduct reasonably placed [Madrid] in fear." *Id.* at 853.

Although there is no evidence of any verbal threat issued by appellant to Madrid or that appellant "brandished" the taser at Madrid before he stunned the side of her leg, section 29.02(a)(2) does not require "that the alleged robber display a weapon or make an express threat in order to support a finding that the victim was threatened or placed in fear." *Welch v. State*, 880 S.W.2d 225, 227 (Tex. App.—Austin 1994, no pet.) (discussing *Cranford*). Here, Madrid testified she saw that appellant was holding a taser and also heard it "buzzing." In addition, Madrid testified that when she saw and heard the taser, prior to actually being "tased," she felt "scared of being hurt." *See Howard*, 333 S.W.3d at 140 (concluding evidence was legally sufficient to show robbery under section 29.02(a)(2) where complainant testified "he was frightened by the appellant"). Madrid not only feared for her own safety, but also she tried to tell her fellow co-workers and Wal-Mart customers not to approach appellant because he had a weapon and they could "get hurt." Viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have concluded beyond a reasonable doubt that appellant's actions involving an electroshock weapon or a stun gun, in the circumstances surrounding this robbery, reasonably threatened Madrid or placed her in fear of imminent bodily injury or death. *See Jackson*, 443

U.S. at 318–19; *Burton*, 230 S.W.3d at 852. Thus, we overrule appellant's legal insufficiency issue.

## B. Whether the trial court committed reversible error during voir dire

During voir dire, appellant's defense counsel asked each of the 65 venire members:

> During the guilt/innocence phase and not during the punishment phase, I think that was unclear, and I apologize, if the instruction is given, I'm asking if you can follow the law? The law is if somebody has a prior conviction and that comes out in guilt/innocence, will you be able not—you're not supposed to use that as evidence of guilt. We're not trying somebody to say did you do something in the past that's on trial for allegedly committing a robbery in this case. Can you follow an instruction, can you follow the law that says you will not use evidence of prior convictions in order to decide someone is guilty in this case?

Of the venire members, 26[5] answered that they could follow such an instruction; 28 of the venire members indicated that they could not; and 11 venire members were unsure whether they could. Appellant's defense counsel requested that the trial court bring back 14 of the venire members (jurors 3, 5, 14, 17, 27, 29, 30, 31, 35, 37, 43, 52, 59, and 64) for additional questioning. The prosecutor objected:

> First, I believe it's an improper commitment question. Second, it's based on a hypothetical that if the Court gave an instruction, could they disregard this hypothetical scenario? I believe the only appropriate question that should be asked is whether or not the juror is willing to follow the law in this case as explained to it by the Judge. Basing any series of questions on this random hypothetical whether or not the Defendant may testify and whether or not evidence may be introduced and then whether or not the Judge gives an instruction is an improper cause question.

---

[5] In his brief, appellant indicates juror 63 did not want to answer the question; however, juror 63 responded "yes" to the trial court's question of whether she would follow the law that the court gives her.

The specific question that appellant's defense counsel wanted to ask these 14 individuals was, "[W]ill you follow an instruction not to use prior convictions as evidence of guilt?" The trial court did not permit the additional question, stating: "In connection with that question, the Court determines that the evidence of guilt will not come in in a guilt or innocence phase. It is an improper question. The Court is going to deny it." Appellant's defense counsel requested that these 14 individuals be stricken for cause, and the trial court denied those strikes.

In appellant's second issue, he argues that the trial court abused its discretion by not allowing him to conduct his requested further inquiry, based on a proper commitment question. Appellant contends that this constituted harmful error impacting his substantial rights because the trial court's refusal interfered with his ability to "intelligently exercise peremptory challenges or challenge venire members for cause."[6]

Assuming solely for purposes of our analysis, but without deciding, that appellant's additional question was a proper commitment question that the trial court should not have prohibited,[7] we conclude that any alleged abuse of discretion

---

[6] We disagree with the State that appellant did not preserve this further-inquiry issue for our review because he failed to object to the trial court's alleged limitation of voir dire. "To preserve error regarding the manner of voir dire, the record must reflect a proper question which the trial court has not allowed to be answered." *Dhillon v. State*, 138 S.W.3d 583, 589 (Tex. App.—Houston [14th Dist.] 2004, pet. struck). A question so vague or broad that it constitutes a "global fishing expedition" is improper and fails to preserve error because it is impossible for a reviewing court to determine if the question is relevant and properly phrased. *Id.* There is no dispute that appellant requested 14 venire members be asked the additional follow-up question, and that the trial court denied his request. The requested question was not so vague or broad as to constitute a "global fishing expedition." *See id.*

[7] A trial court abuses its discretion only when it prohibits a proper question about a proper area of inquiry. *Woods v. State*, 152 S.W.3d 105, 108 (Tex. Crim. App. 2004). A question is proper if it seeks to discover a juror's views on an issue applicable to the case. *Id.* However, an otherwise proper question is impermissible if it attempts to commit the juror to a particular verdict based on particular facts. *Id.*

A commitment question is one that "commits a prospective juror to resolve, or to refrain

10

in "the denial of full and appropriate voir dire" did not harm appellant.[8]

The appropriate standard of harm is to disregard the error unless a substantial right has been affected. *Woods v. State*, 152 S.W.3d 105, 109 (Tex. Crim. App. 2004) (citing TEX. R. APP. P. 44.2(b)). A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict. *Id.* at 109–10 (citing *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)). It is not appellant's burden to show harm, but the "duty of the reviewing court to assess harm from the context of the error." *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001).

Comparing the requested additional follow-up question—"[W]ill you follow an instruction not to use prior convictions as evidence of guilt?"—with the earlier question asked of and answered by all 65 jury venire members—"Can you follow an instruction, can you follow the law that says you will not use evidence of prior convictions in order to decide someone is guilty in this case?"—they present virtually identical questions. Therefore, we conclude that, even if appellant had been able to ask the 14 individuals the requested additional question, asking the same question again would not have improved appellant's ability to "fully develop" his strikes for cause. *See Woods*, 152 S.W.3d at 110 ("The trial court's

---

from resolving, an issue a certain way after learning a particular fact." *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001). For a commitment question to be proper, one of the possible answers to the question must give rise to a valid challenge for cause. *Id.* at 182. The inquiry for determining an improper commitment question involves two steps: (1) a determination of whether the question is indeed a commitment question; and (2) a determination of whether the question includes facts—and only those facts—that lead to a valid challenge for cause. *Id.* If the answer to the first determination is "yes" and the answer to the second is "no," the proposed question is an improper commitment question and the trial court should not allow it. *Id.* at 182–183.

[8] Courts of appeals may affirm convictions based on a lack of harm and need not address whether challenged questions are improper commitment questions. *See Sanchez v. State*, 165 S.W.3d 707, 712–13 (Tex. Crim. App. 2005).

11

denial of a proper question in this case did not have a substantial or injurious effect or influence in determining the jury's verdict because defense counsel was able to ask [juror] essentially the same question.").

Moreover, while he cites article 35.16 of the Code of Criminal Procedure,[9] appellant does not complain about or provide any analysis of the trial court's denial of any of his challenges for cause.[10]  Therefore, appellant has waived any complaint relating to the denial of his challenges for cause.  *See Foster v. State*, 779 S.W.2d 845, 864 (Tex. Crim. App. 1989).

## C. Appellant's jury charge issues

In reviewing alleged jury charge error, we first determine whether error exists in the charge, and then, if so, whether sufficient harm resulted from the error to warrant reversal.  *Bradford v. State*, 230 S.W.3d 719, 721 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (citing *Druery v. State*, 225 S.W.3d 491, 504 (Tex. Crim. App. 2007)).  The degree of harm necessary for reversal depends on whether the error was preserved.  *Id.*  Where, as here, an appellant does not object to the charge, the conviction will not be reversed unless the record shows "egregious harm."  *Id.*  Egregious harm is that which affects the very basis of the case, deprives the appellant of a valuable right, or vitally affects a defensive theory.  *Id.*

### 1. Whether the jury charge violated appellant's right to jury unanimity

Appellant complains that the trial court's charge to the jury violated his right to a unanimous verdict.  Appellant contends that the jury charge permitted conviction for either of two distinct criminal offenses, and therefore it is

---

[9] Article 35.16 governs "Reasons for challenge for cause."  TEX. CODE CRIM. PROC. ANN. art. 35.16 (West 2012).

[10] "Denial of a proper challenge for cause is error because the makeup of the jury affects its decision."  *Johnson*, 43 S.W.3d at 5.

impossible to know which one the jury found unanimously. Specifically, appellant argues that the language "threatening to shock" properly refers to the conduct-oriented offense under section 29.02(a)(2) while the language "attempting to shock" only can refer to the result-oriented offense under section 29.02(a)(1).

The jury charge stated:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 21st day of May, 2011, in Harris County, Texas, the defendant, Reginald Tyrone Loville, did then and there unlawfully, while in the course of committing theft of property owned by Lisa Madrid, and with intent to obtain or maintain control of the property, intentionally or knowingly threaten or place Lisa Madrid in fear of imminent bodily injury or death, by threatening to shock Lisa Madrid with an electroshock weapon; or

If you find from the evidence beyond a reasonable doubt that on or about the 21st day of May, 2011, in Harris County, Texas, the defendant, Reginald Tyrone Loville, did then and there unlawfully, while in the course of committing theft of property owned by Lisa Madrid, and with intent to obtain or maintain control of the property, intentionally or knowingly threaten or place Lisa Madrid in fear of imminent bodily injury or death, by attempting to shock Lisa Madrid with an electroshock weapon; or

If you find from the evidence beyond a reasonable doubt that on or about the 21st day of May, 2011, in Harris County, Texas, the defendant, Reginald Tyrone Loville, did then and there unlawfully, while in the course of committing theft of property owned by Lisa Madrid, and with intent to obtain or maintain control of the property, intentionally or knowingly threaten or place Lisa Madrid in fear of imminent bodily injury or death, by threatening to shock Lisa Madrid with a stun gun; or

If you find from the evidence beyond a reasonable doubt that on or about the 21st day of May, 2011, in Harris County, Texas, the defendant, Reginald Tyrone Loville, did then and there unlawfully, while in the course of committing theft of property owned by Lisa Madrid, and with intent to obtain or maintain control of the property, intentionally or knowingly threaten or place Lisa Madrid in fear of

imminent bodily injury or death, by attempting to shock Lisa Madrid with a stun gun, then you will find the defendant guilty of robbery, as charged in the indictment.

During closing argument, the prosecutor explained the jury charge as follows:

Did the Defendant, Reginald Loville, attempt to commit theft and in the course of that theft, did he threaten the complaining witness, Lisa Madrid? And it asks different variations of that fact. Did he threaten her by attempting to shock her with an electroshock weapon or a stun gun, or did he threaten her by threatening her with the electroshock weapon or stun gun? It's different ways to say the same thing, basically. It just covers all the bases.

The verdict form submitted to the jury permitted a verdict of not guilty or guilty of robbery, as charged in the indictment.

"Under our state constitution, jury unanimity is required in felony cases, and, under our state statutes, unanimity is required in all criminal cases." *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005). While the jury must unanimously agree about the occurrence of a single criminal offense, it need not be unanimous about the specific manner or means of how that offense was committed. *Young v. State*, 341 S.W.3d 417, 422 (Tex. Crim. App. 2011); *Ngo*, 175 S.W.3d at 745–46. When an appellant's indictment does not allege different offenses but only different ways of committing the same offense, the court properly furnishes the jury with a general verdict form. *Aguirre v. State*, 732 S.W.2d 320, 326 (Tex. Crim. App. 1982) (op. on reh'g). Further, the unanimity requirement is not violated by instructing the jury on alternative legal theories of committing the same offense. *Martinez v. State*, 129 S.W.3d 101, 103 (Tex. Crim. App. 2004). Alternative methods of committing the same offense are properly submitted to the jury in the disjunctive if the evidence is legally sufficient to support a finding of the offense under any of the theories submitted. *Wert v. State*, 383 S.W.3d 747, 755 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Kitchens v. State*, 823

S.W.2d 256, 258 (Tex. Crim. App. 1991)).

The robbery statute provides two separate criminal offenses—robbery causing bodily injury and robbery by threat. *See* TEX. PENAL CODE ANN. § 29.02(a)(1), (2); *Woodard v. State*, 294 S.W.3d 605, 608 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). The Court of Criminal Appeals recognizes robbery as a form of assault. *Ex parte Hawkins*, 6 S.W.3d 554, 560 (Tex. Crim. App. 1999). And the Court of Criminal Appeals has held that bodily-injury assault is a result-oriented offense, while assault by threat is a conduct-oriented offense, "focusing upon the act of making a threat, regardless of any result that threat may cause." *Landrian v. State*, 268 S.W.3d 532, 536 (Tex. Crim. App. 2008). Similarly, robbery by bodily injury and robbery by threat each has a different "gravamen or focus of the offense." *See Young*, 294 S.W.3d at 424. In a "result of conduct" offense, such as bodily-injury robbery, the jury must be unanimous about the specific result required by the statute, bodily injury to the complainant. *See id.* With a "nature of conduct" crime, such as robbery by threat, the jury must be unanimous about the specific criminal act, namely, that the perpetrator threatened or placed the complainant in fear of imminent bodily injury. *See id.*

In this case, both the indictment and the jury charge indicate that the only robbery offense involved in this case was robbery by threat under section 29.02(a)(2). Each paragraph of the indictment and the jury charge substantially tracked the statutory language found in section 29.02(a)(2)[11]—that appellant "intentionally and knowingly threaten and place [Lisa Madrid] in fear of imminent bodily injury and death" (indictment) and that appellant "intentionally or knowingly threaten or place Lisa Madrid in fear of imminent bodily injury or

---

[11] TEX. PENAL CODE ANN. § 29.02(a)(2) ("intentionally or knowingly threatens or places another in fear of imminent bodily injury or death").

death" (charge).[12]   Thus, the "gravamen of the offense" for all four application paragraphs of the charge was the same.  *See Young*, 341 S.W.3d at 424; *Woodard*, 294 S.W.3d at 609–10.  None of the charge paragraphs used language authorizing the jury to convict where appellant "intentionally, knowingly, or recklessly causes bodily injury to another" per section 29.02(a)(1) or any equivalent statutory language.  *See* TEX. PENAL CODE ANN. § 29.01(a)(1).[13]

Here, all the jury needed to find unanimously was that appellant committed the criminal offense of robbery by threat; it did not need to agree as to whether appellant accomplished that offense by (1) "threatening to shock" Madrid with an electroshock weapon, (2) "attempting to shock" Madrid with an electroshock weapon, (3) "threatening to shock" Madrid with a stun gun, or (4) "attempting to shock" Madrid with a stun gun.  *See Young*, 341 S.W.3d at 428.  Thus, charging the jury in the disjunctive as to alternative methods of how appellant committed robbery by threat and submitting a general verdict form were proper.  *See Aguirre*, 732 S.W.2d at 326; *Wert*, 383 S.W.3d at 755.

Contrary to appellant's contention that "attempting to shock" only can relate

---

[12] *Supra* n.3.

[13] Thus, this situation is easily distinguished from that in *Marinos v. State*, relied on by appellant.  186 S.W.3d 167 (Tex. App.—Austin 2006, pet. ref'd).  In *Marinos*, the appellant was indicted for one count of aggravated bodily-injury assault and one count of aggravated assault by threat.  With regard to aggravated bodily-injury assault, the charge included three theories of how the appellant committed the offense: (1) by placing a bag on the complainant's face where the bag is a deadly weapon, (2) by placing a piece of a bag on the complainant's face where the piece of a bag is a deadly weapon, and/or (3) by placing his hand over the complainant's mouth and nose where his hand is a deadly weapon.  With regard to aggravated assault by threat, the charge included two theories of how the appellant committed the offense: (1) while using or exhibiting a bag as a deadly weapon, and/or (2) while using or exhibiting his hand as a deadly weapon.  *Id.* at 174–75.  The court concluded there was error because the charge "allow[ed] the jury to return a general guilty verdict without unanimously agreeing that appellant committed either aggravated bodily[-]injury assault or aggravated assault by threat."  *Id.* at 175.  Thus, although it was not necessary for the jury to agree on the method of committing either type of assault, the jury had to agree on what type of assault had been committed.  *Id.*

16

to an intent to cause injury, not to an intent to threaten, the theory that appellant committed a robbery by threat via his conduct in "attempting to shock" Madrid, regardless of any resulting injury, is consistent both with section 29.02(a)(2) and Texas case law interpreting robbery by threat. Appellant argues that *McGowan* supports the proposition that "attempting to shock" only can require an intent to injure and not an intent to threaten. We cannot agree. In *McGowan*, the Court of Criminal Appeals held that where there only is evidence of bodily injury, but no evidence the appellant exhibited any threatening conduct prior to or after the bodily injury, a conviction for aggravated assault by threat cannot be sustained. 664 S.W.2d at 357–58. However, in *McGowan*, the Court also sustained a conviction for aggravated assault by threat where, regardless of the fact that a different complainant also suffered a bodily injury, the evidence showed that complainant saw appellant's weapon and begged him not to hurt her. *Id.* at 358. Thus, *McGowan* does not preclude including in a jury charge the legal theory that appellant threatened or placed Madrid in fear by his conduct in "attempting to shock" her. As long as appellant's conduct in "attempting to shock" Madrid was of such nature as in reason and common experience is likely to induce Madrid to part with her property against her will, this theory, if found by the jury, would satisfy the threaten-or-place-in-fear element of the offense. *See Howard*, 333 S.W.3d at 138.[14] And while appellant insists that the record supports the conclusion that Loville attempted to or actually caused a bodily injury to Madrid,

---

[14] Appellant also points to the inclusion of the definition of "attempt" (tracking section 15.01(a) of the Penal Code) within the abstract portion of the charge and argues that the jury was somehow confused as to appellant's requisite intent and thus whether it should convict appellant of robbery by bodily injury or robbery by threat. Again, appellant offers nothing in support except *McGowan*. Moreover, to put it in context, this "attempt" definition directly followed the trial court's defining the term "in the course of committing theft" to mean "conduct that occurs in an *attempt* to commit, during the commission, or in immediate flight after the *attempt* or commission of theft." (Emphases added). *See* TEX. PENAL CODE ANN. § 29.01(1).

17

the State was not required also to indict appellant for bodily-injury robbery under section 29.02(a)(1). There is no question that the State has the power to choose what offense to pursue. *In re State ex rel. Weeks*, 391 S.W.3d 117, 123–24 (Tex. Crim. App. 2013). "This concept . . . also applies to legal theories available to prove the charged offense." *Id.* at 124.

Here, the State chose to pursue robbery by threat and to offer the permissible, alternative legal theories that appellant committed the offense either by "threatening to shock" or "attempting to shock" Madrid, either with an electroshock weapon or a stun gun. The jury charge tracked such indictment; the charge did not include any language regarding appellant's causing bodily injury to Madrid. The State's closing argument indicated that the charge asked the jury "different variations" of whether appellant committed robbery by threat. The jury returned a unanimous verdict that appellant committed the charged offense. We conclude that the trial court committed no error in the jury charge and the charge did not violate appellant's right to unanimity. *See Young*, 341 S.W.3d at 138. Therefore, we overrule appellant's third issue.

## 2. Whether the jury charge included surplusage that improperly negated the mental state required for robbery by threat

In a closely related issue, appellant argues the language "by attempting to shock Lisa Madrid" included in the jury charge is surplusage that improperly negated the mental state required to commit robbery by threat. We already have determined that including "attempting to shock" Madrid as a manner or means of how appellant committed the offense of robbery by threat did not constitute charge error in the context of appellant's right to unanimity. Appellant's argument that "attempting to shock" is surplusage that is inconsistent with and negates an element of robbery by threat similarly is based on his flawed interpretation of the

18

holding in *McGowan*. Simply put, "the holding in *McGowan* is that there must be some evidence of a threat being made to sustain a conviction of assault by threat." *Olivas*, 203 S.W.3d at 349. Since "threats can be conveyed in more varied ways than merely a verbal manner,"[15] evidence of a threat being made and, therefore, legal theories based on such evidence also can take various forms. *See Howard*, 333 S.W.3d at 138 ("[Section 29.02(a)(2)] encompasses not just explicit threats, but whatever implicit threats may lead to the victim being placed in fear."). Thus, appellant's conduct in that he "attempted to shock" Madrid presents a permissible manner or means of committing robbery by threat consistent with section 29.02(a)(2)'s requirement that appellant "intentionally or knowingly threaten[ed] or place[d] [Madrid] in fear of imminent bodily injury or death." *See* TEX. PENAL CODE ANN. § 29.02(a)(2). Therefore, we also overrule appellant's fourth issue.

## D. Whether the trial court violated appellant's confrontation clause right during the punishment phase

In appellant's first issue, he complains that during the punishment hearing, the trial court erroneously permitted testimony by Officer Hardy and Detective Braune about four particular extraneous offenses allegedly committed by appellant. These four alleged offenses are: (1) an unspecified crime occurring on May 23, 2011, at 12546 East Freeway, at 9 a.m.; (2) an unspecified crime occurring on May 23, 2011, at 9700 Mesa Road, at 5:48 p.m.; (3) a robbery occurring on May 27, 2011; and (4) a parole violation occurring on May 27, 2011.[16] Appellant argues that admitting testimonial hearsay regarding the involvement of a white Pontiac Sunfire, a taser, and/or a suspect fitting appellant's description—obtained from

---

[15] *McGowan*, 664 S.W.2d at 357 (citations omitted).

[16] As discussed in more detail *infra*, the record reflects that any parole violation related to appellant's parking in a handicap spot without a sticker occurred not on May 27, but instead likely occurred on May 17.

eyewitnesses who did not testify at trial—violated appellant's Sixth Amendment confrontation clause right and contributed to the jury's assessment of a life sentence.

### 1. The confrontation clause applies during the punishment phase.

This court recognizes that the confrontation clause applies during the punishment phase of a criminal trial. *Dixon v. State*, 244 S.W.3d 472, 482-83 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). The confrontation clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. In *Crawford v. Washington*, the Supreme Court held that it was a violation of the Sixth Amendment to admit testimonial statements of a witness who did not appear at trial unless that witness was unavailable to testify and the defendant had a prior opportunity for cross-examination. 541 U.S. 36, 68 (2004). We have identified the following principles as guidance in determining whether statements are testimonial in nature: (1) testimonial statements are official and formal in nature, (2) interaction with the police initiated by a witness or the victim is less likely to result in testimonial statements than if initiated by the police, (3) spontaneous statements to the police are not testimonial, and (4) responses to preliminary questions by police at the scene of the crime while police are assessing and securing the scene are not testimonial. *Ruth v. State*, 167 S.W.3d 560, 568–69 (Tex. App.—Houston [14th Dist.] 2005 pet. ref'd). And in *Davis v. Washington*, the Supreme Court explained:

> Statements are non-testimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to

establish or prove past events potentially relevant to later criminal prosecution.

547 U.S. 813, 822 (2006).

We review de novo the constitutional legal question of whether a statement is testimonial. *Dixon*, 244 S.W.3d at 481 (citing *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006)). Confrontation clause claims are subject to the requirement that to preserve error, there must be a timely and specific objection to the complained-of evidence. *Davis v. State*, 313 S.W.3d 317, 347 (Tex. Crim. App. 2010); *Reyna v. State*, 168 S.W.3d 173, 179–80 (Tex. Crim. App. 2005); *see also* TEX. R. APP. P. 33.1(a)(1)(A). Other types of objections, such as to hearsay, fail to preserve error on confrontation clause grounds. *Paredes v. State*, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004).

## 2. Unspecified crime occurring on May 23, 2011 at 9 a.m.

Braune provided the following testimony:

A. The case occurred [sic] approximately 9 o'clock in the morning.

Q. And that was on what date?

A. That was on May the 23rd, 2011.

Q. And, again, what were the similarities in this case and the master case that brought it to your attention?

A. That's going to be the white Pontiac Sunfire.

Q. Anything else?

A. Description of the Defendant was the same as in the other related cases and in the master case.

Q. Okay. So the same description, same car?

A. And the use of the taser by the description of the—it was the use of the taser, also.

Q. So the car, the description and the taser?

A. That's correct.

Q. And that happened at 9:00 in the morning on May 23rd?

A. On the 23rd.

Q. What was the address of that location?

A. That was at 12546 East Freeway.

The record reveals no timely objection was made to this testimony. Therefore, appellant failed to preserve any confrontation clause error regarding the May 23, 2011 9:00 a.m. extraneous offense. *See Davis*, 313 S.W.3d at 347.

### 3. Unspecified crime occurring on May 23, 2011 at 5:48 p.m.

Later, Braune provided the following testimony:

Q. And then moving on to the fourth one on that date. Let me direct you to Offense Report No. 066300011. Do you have that in front of you?

A. Yes, sir, I do.

Q. And what time did that incident occur?

A. Incident occurred at 1748 hours.

Q. And what was the—on what date, I'm sorry?

A. And that was on May the 23rd of 2011.

Q. What time is 1748 hours for the jury?

A. Would be 5:48.

Q. 5:48, okay. And what are the similarities in that case that draw your attention to—

MR. HOCHGLAUBE: Judge, I'd object. I believe this is outside of the State's proffer they had yesterday. Actually, may I have a sidebar with the Prosecutor?

THE COURT: Yes.

MR. HOCHGLAUBE: Judge, may I have a running objection to the Sixth Amendment issue in terms of this officer testifying to what other witnesses might say?

THE COURT: You may have a running objection to the testimony. The others will have to take, obviously, question by question.

22

MR. HOCHGLAUBE: To him testifying to what other witnesses would say.

THE COURT: Some of it may be admissible, some of it may not. So, you'll need to object appropriately.

MR. HOCHGLAUBE: Yes, Judge.

Q. (BY MR. WHITE) Detective, and the one that we're referring to, you said it happened at 5:48?

A. That's correct, yes, sir.

Q. On the 23rd?

A. On the 23rd.

Q. What location is that at?

A. 9700 block of Mesa Drive.

Q. Is that in Harris County, Texas?

A. Yes, sir, it is.

Q. And what were the similarities in that case?

A. In this case the—

MR. HOCHGLAUBE: I object to this being, to him testifying to what other witnesses would say as hearsay and the Sixth Amendment violation.

THE COURT: All right. Your objection is overruled.

A. The similarities were the white Pontiac Sunfire. One of the suspects used a taser during the incident, and the description of the suspects were similar, the same as one of the Defendants.

This time, appellant timely objected, and was granting a running objection,[17] to Braune's testimony on the basis of "the Sixth Amendment issue in terms of this officer testifying to what other witnesses might say." Appellant also specifically objected to Braune's testimony as hearsay and a violation of the Sixth Amendment. Thus, we conclude that appellant sufficiently preserved constitutional

---

[17] Continuing or running objections are permitted in the context of confrontation clause claims. *See Vinson v. State*, 252 S.W.3d 336, 340 (Tex. Crim. App. 2008); *Campos v. State*, 256 S.W.3d 757, 761 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd).

confrontation clause error with regard to this extraneous offense. *See Reyna*, 168 S.W.3d at 179–80.

Once appellant objected to the admission of Braune's testimony as to what information he learned from eyewitnesses, the burden shifted to the State, as the proponent of that evidence, to establish it was admissible under *Crawford*. *See De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008) (citing *Vinson v. State*, 252 S.W.3d 336, 340 (Tex. Crim. App. 2008)). "In other words, once appellant objected, the State was obligated to establish either (1) that [Braune's testimony] did not contain testimonial hearsay statements or (2) that [Braune's testimony] did contain testimonial hearsay statements but that such statements were nevertheless admissible under *Crawford*." *De La Paz*, 273 S.W.3d at 680–81. After reviewing the record and considering that the State did not argue these statements were not testimonial in its brief, or that the witness(es) was unavailable to testify and appellant had a prior opportunity for cross-examination, we conclude the State failed to carry its burden. *See id.* at 681. Certainly, the hearsay statements in Braune's testimony "were not obviously non-testimonial." *See id.* Indeed, statements from witnesses or victims, particularly within the context of a consolidated robbery investigation involving perhaps ten robberies, appear to have the "primary purpose . . . to establish or prove past events potentially relevant to later criminal prosecution." *See Davis*, 547 U.S. at 822. Also, the circumstances do not objectively indicate that the statements to the police were spontaneous, that the interaction was initiated by witnesses or victims instead of by the police, or that the statements were required to meet an ongoing emergency.[18] *See id*; *Ruth*, 167 S.W.3d at 568–69. Therefore, we conclude that the trial court erred in allowing Braune's testimony as to the similar details of the May 23, 2011 5:48 p.m. crime.

---

[18] Indeed, Braune did not even get assigned to the series of robberies until May 25.

### 4. Robbery occurring on May 27, 2011

Appellant next complains about both Hardy's and Braune's testimony with regard to an alleged robbery occurring on May 27.  Hardy testified:

> Q. And on May 25th, who did this case get assigned to?
>
> A. Officer Fred Braune.
>
> Q. And did he only get assigned the case of the May 21st, 2011?
>
> A. No, at that point we realized that there were multiple cases involving what we believe were the same suspects, same suspect's vehicle; and they were all assigned to Fred Braune at that point.
>
> Q. Did you have any other connection with any of these cases after that date?
>
> A. I did.
>
> Q. And other than the arrest?
>
> A. That's correct, yes.
>
> Q. What else did you do as far as this investigation?
>
> A. We learned of an additional robbery that had occurred at the time of the arrest on May 27th.
>
> Q. And you worked on that case?
>
> A. I did.

Again, the record reveals no timely objection was made to this testimony. Therefore, appellant failed to preserve any confrontation clause error regarding Hardy's testimony about this alleged extraneous offense.  *See Davis*, 313 S.W.3d at 347.  Further, the record does not indicate any testimony by Braune regarding any May 27 alleged robbery.

### 5. Parole violation occurring on May 17, 2011

Braune provided the following testimony:

> Q. And [the contents of State's exhibit 49] also contained a parking citation?

A. Yes, it did.

Q. What's the location of the parking citation?

A. Was at 150 West El Dorado Boulevard in Houston.

Q. Do you know what that location is?

A. It's a Wal-Mart location.

Q. And what's the citation for?

A. Parked in a handicap without a sticker.

Q. Okay. Detective, now moving back to the arrest. When you made a determination that you had your suspect, how did you go about effecting the arrest?

A. I was able to obtain a parole violation warrant for his arrest.

Q. And so when you went to arrest the Defendant, you were not arresting him for these offenses yet; is that correct?

A. That's correct.

Q. So, what were you arresting him for?

A. He had a—it was a violation of his parole due to the testimony of the wrecker driver.

MR. HOCHGLAUBE: We'd object. This is a violation of 37.07 we haven't been given proper notice.

THE COURT: Your objection is overruled.

MR. HOCHGLAUBE: May we have a running objection?

THE COURT: Yes.

Q. (BY MR. WHITE) So, you were arresting him for violating his parole, correct?

A. Yes, that's correct.

Here, Braune is describing a parking citation that was issued at 150 West El Dorado Blvd. at a Wal-Mart location,[19] and had been recovered by police on May

---

[19] Earlier during the punishment phase, Hardy testified regarding an aggravated robbery occurring at a Wal-Mart at 150 West El Dorado on May 17, 2011, and testified, without any confrontation clause objection, that the get-away vehicle allegedly involved was a white Pontiac Sunfire. Also during the punishment phase, the State presented testimony from the Wal-Mart

25, 2011, in the repossessed Pontiac Sunfire.[20]  Earlier in the punishment phase, the trial court had overruled appellant's article 37.07[21] notice objection regarding the State's request to admit various pieces of physical evidence, including the parking citation, that had been located in the repossessed car.  But nothing in appellant's previous article 37.07 notice objection to the State's physical evidence or in the instant, running article 37.07 notice objection brought to the trial court's attention the confrontation clause's "precise and proper application to the evidence in question."  *See Reyna*, 168 S.W.3d at 176, 179–80 (concluding that appellate court erred in reversing conviction on constitutional confrontation clause ground when appellant only had made evidentiary argument to trial court); *Huizar v. State*, 12 S.W.3d 479, 482 (Tex. Crim. App. 2000) (explaining that article 37.07's requirements are "evidentiary" and have "no constitutional underpinnings").  Also, during Braune's cross-examination, appellant repeated that the parking citation had been located in the repossessed car.

Moreover, applying appellant's running confrontation clause objection[22] to Braune's testimony regarding any hearsay statement by the wrecker driver, there is no indication that the wrecker driver was involved in or had any knowledge of,

---

asset protection officer who was on duty during the May 17 incident; he testified regarding the relevant portion of the video footage of that alleged aggravated robbery to the jury.  The alleged crime took place in the parking lot of the Wal-Mart and involved the theft of a flat-screen television.

[20] In the guilt-innocence phase, Braune had testified, without any objection, that the wrecker driver confirmed he repossessed a white Pontiac Sunfire with the same paper dealer plate as that located on the repossessed vehicle.

[21] Article 37.07 governs "Evidence of prior criminal record in all criminal cases after a finding of guilty," and requires that the State provide notice of its intent to introduce such evidence upon timely request by the defendant.  *See* TEX. CODE CRIM. P. ANN. art. 37.07, § 3(g) (West 2012).

[22] The trial court previously had granted appellant a running objection "in terms of this officer testifying to what other witnesses might say."

much less provided Braune with information regarding, any May 17, 2011 Wal-Mart parking citation located by police in the Pontiac Sunfire or any alleged citation-related parole violation, only that the driver confirmed that he effected repossession by towing the vehicle back to the dealer.[23]  In other words, the wrecker driver's testimony could do little more than reconfirm that police indeed had recovered the same white Pontiac Sunfire involved in the instant May 21 Wal-Mart robbery.[24]  We therefore conclude the trial court did not commit any confrontation clause error in the admission of this portion of Braune's testimony.

### 6. Admission of Braune's testimony regarding the May 23, 2011 5:48 p.m. crime was harmless beyond a reasonable doubt.

We nevertheless will affirm an appellant's sentence if we determine beyond a reasonable doubt that the harm from the confrontation clause error did not contribute to his punishment.  *Dixon*, 244 S.W.3d at 487 (citing TEX. R. APP. P. 44.2(a); *Grant v. State*, 218 S.W.3d 225, 233 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd)).  In determining whether error in admitting testimonial statements is harmless beyond a reasonable doubt, we consider: (1) the importance of the testimonial statements to the State's case; (2) whether the statements were cumulative of other evidence; (3) the presence or absence of evidence corroborating or contradicting the statements on material points; and (4) the overall strength of the State's case.  *Id.* (citing *Grant*, 218 S.W.3d at 233).  A *Crawford* error does not require reversal unless there is a reasonable probability that the error moved the jury from a state of nonpersuasion to one of persuasion on the

---

[23] The record indicates that the vehicle was repossessed sometime after Hardy initially visited the dealer on May 24, and before Hardy returned to the dealer to continue his investigation on May 25.  In contrast, the record indicates that the parking citation likely was issued—and thus the alleged parole violation occurred—on May 17.  However, only the evidence tag, not the actual citation itself, is contained in the record.

[24] *Supra* n.20.

appellant's sentence. *Id.* We consider the entire record in our assessment of the likelihood that, absent the trial court's confrontation clause error, the jury verdict as to appellant's punishment would have been the same. *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007).

Here, we are persuaded beyond a reasonable doubt that the jury's verdict as to appellant's punishment would have been the same even if the trial court had not admitted Braune's testimony concerning the May 23, 2011 5:48 p.m. crime involving similar details of a white Pontiac Sunfire, a taser, and a suspect fitting appellant's description. First, we acknowledge that this alleged extraneous offense, involving the same type of car, weapon, and suspect, was part of an important segment of the State's punishment evidence. Certainly, the State sought to connect appellant to each and every one of the string of approximately ten robberies occurring close in time to the May 21 instant case. However, even excluding this particular May 23 offense, the State presented significant evidence regarding, and attributing to appellant, nine of the robberies under investigation.[25] Hardy confirmed that a "key component" in the robberies was the white Pontiac Sunfire. According to Hardy, there were approximately ten robberies "involving what we believe were the same suspects, same suspect's vehicle; and they were all assigned to Fred Braune." Braune linked the white Pontiac Sunfire to "most all the robberies," the identification of appellant to "some of those robberies," and the use of a taser to approximately seven of the robberies. Specifically, excluding the May 21 robbery on trial and the May 23 5:48 p.m. offense, during the punishment phase the State offered evidence regarding eight other crimes within the same robbery investigation:

(1) a May 17 aggravated robbery at 150 West El Dorado, involving

---

[25] The ninth robbery was the May 21, 2011 one for which appellant was convicted.

29

theft of a television in a Wal-Mart parking lot from an elderly customer, a suspect fitting appellant's description, and a white Pontiac Sunfire;

(2) a May 21 aggravated robbery at 8402 Hillcroft occurring at 12:38 p.m., involving theft of money from an elderly customer at a gas station, a suspect fitting appellant's description, a white Pontiac Sunfire, and use of a taser;

(3) a May 21 robbery occurring at 9:57 p.m., involving theft of money from an ATM customer, in-court identification of appellant as the perpetrator, a white Pontiac Sunfire, and use of a taser;

(4) a May 23 crime at 12546 East Freeway occurring at 9:00 a.m., involving a suspect fitting appellant's description, a white Pontiac Sunfire, and use of a taser;

(5) a May 23 robbery at 7555 Scott Street occurring at 12:10 p.m., involving attempted theft of money from a customer at a Valero gas station, in-court identification of appellant, a white Pontiac Sunfire, and use of a taser;

(6) a May 23 robbery also at the same Valero occurring shortly thereafter, involving theft of various items from another customer's vehicle, in-court identification of appellant as the perpetrator, a white Pontiac Sunfire, and use of a taser;

(7) a May 23 robbery at 7950 F.M. 1960 occurring at 3:00 p.m., involving theft of a diamond ring from a Sam's Club, in-court identification of appellant as the perpetrator, and a white Pontiac Sunfire; and

(8) a May 27 robbery, involving a suspect fitting appellant's description and a white Pontiac Sunfire.

Second, other evidence regarding appellant's involvement in the May 23, 2011 5:48 p.m. crime was admitted, without objection. The State introduced a Google map showing the four locations of all the alleged robberies occurring on May 23, 2011, including the May 23 5:48 p.m. crime, through Braune. During cross-examination of Braune, appellant referred to the same Google map and the same four locations of all the May 23 offenses allegedly involving appellant.

Third, with regard to eight of the other offenses within the consolidated robbery investigation, the State introduced evidence attributing those "bad acts" to appellant, through a similar suspect description, including video footage or actual eyewitness identification; through description of the white Pontiac Sunfire, including video footage or eyewitness testimony; and/or through description of the use of a taser, including eyewitness testimony. *See Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005) (explaining that article 37.07 "require[s] the burden of proof to be applied to a defendant's involvement in the act itself, instead of the elements of a crime necessary for a finding of guilt").

And finally, in addition to appellant's involvement in the string of May 2011 robberies, the State presented other compelling, uncontroverted evidence of appellant's extraneous crimes and bad acts during the punishment phase. The State presented evidence of appellant's being convicted and sentenced in 16 prior criminal judgments. *See Dixon*, 244 S.W.3d at 487. According to the testimony, appellant's prior convictions since 1989 added up to 75 years in the Texas Department of Corrections. In addition, appellant pleaded true to the two prior felony enhancement paragraphs—robbery and possession of cocaine—so the jury already was required by statute to assess punishment at not less than 25 years nor more than 99 years or life. *See* TEX. PENAL CODE ANN. § 12.42(d) (West 2012). Further, the jury was instructed twice that it could not consider evidence of appellant's extraneous crimes or bad acts in assessing punishment unless the State had proven appellant's involvement beyond a reasonable doubt—both orally during the punishment phase and within the punishment charge.

Considering the entire record, in light of all the evidence properly before the jury, we conclude that there is no reasonable probability that Braune's testimony regarding the May 23, 2011 5:48 p.m. crime moved the jury from a state of

nonpersuasion to one of persuasion with regard to assessing appellant's punishment at life. *See Dixon*, 244 S.W.3d at 487. Therefore, we overrule appellant's first issue.

### III.   CONCLUSION

Accordingly, having overruled appellant's legal insufficiency, voir dire, jury charge, and confrontation clause issues, we affirm the trial court's judgment.


/s/    Tracy Christopher
Justice


Panel consists of Justices Christopher, Jamison, and McCally.

Do Not Publish — TEX. R. APP. P. 47.2(b).